## UNITED STATES *v.* AMES.

1. A bond accepted by the court upon ordering the delivery to the claimant of property seized in admiralty, is in the subsequent proceedings a substitute for the property; and the question whether a case is made for the recall of the property must be determined before a final decree on· the bond is rendered in the District Court, or in the Circuit Court on appeal. Action on that question cannot be reviewed here.
2. A decree rendered on such a bond given with sureties by the claimant at the request and for the benefit of his firm, to which the property so delivered to him belonged, bars a suit against the other partners.
3. The fact that the adverse party had no knowledge touching the ownership of the property, and that, by reason of the insolvency of the defendants, payment of the decree cannot be enforced, affords, in the absence of fraud, misrepresentation, or mistake, no ground for relief in equity.
4. Conclusions of law are not admitted by a demurrer.

APPEAL from the Circuit Court of the United States for the District of Massachusetts.

The facts are stated in the opinion of the court.

*Mr. E. S. Mansfield* and *Mr. G. A. Somerby* for the appellant.

*Mr. George O. Shattuck* and *Mr. Oliver W. Holmes, Jr.,* contra.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Judicial cognizance of prize cases is derived from that article of the Constitution which ordains that the judicial power shall extend to all cases of admiralty and maritime jurisdiction; and the district courts for many years exercised jurisdiction in such cases without any other authority from Congress than what was conferred by the ninth section of the Judiciary Act, which gave those courts exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including the seizures· therein mentioned, the rule adopted being that prize jurisdiction was involved in the general delegation of admiralty and maritime cognizance, as conferred by the language of that section. *Glass* v. *The Betsey*, 3 Dall. 6; *The Admiral*, 3 Wall. 603; *Jennings* v. *Carson*, 1 Pet. Adm. 7; 1 Kent, Com. (12th ed.) 355; 2 Stat. 781, sect. 6.

Admiralty courts proceed according to the principles, rules,

and usages which belong to the admiralty as contradistinguished from the courts of common law.   *Manro* v. *Almeida*, 10 Wheat. 473; 1 Stat. 276.

Seizure of the property and the usual notice precede the appearance of the claimant; but when those steps are taken, the owner or his agent, if he desires to defend the suit, must enter his appearance in the case, and the court may, in its discretion, require the party proposing to appear and defend the suit to give security for costs as a preliminary condition to the granting of such leave.

Due appearance having been entered, the claimant, if he wishes to avoid the inconvenience and expense of having the property detained until the termination of the suit, may apply to the court at any time to have the property released on giving bond, which application it is competent for the court to grant or refuse.

Bail in such a case is a pledge or substitute for the property as regards all claims that may be made against it by the promoter of the suit.   It is to be considered as a security, not for the amount of the claim, but simply for the value of the property arrested, to the extent of the claim and costs of suit, if any, beyond the preliminary stipulation.   Williams & Bruce, Prac. 210.

Whenever a stipulation is taken in the admiralty for the property subjected to legal process and condemnation, the stipulation is deemed a mere substitute for the thing itself, and the stipulators are held liable to the exercise of all those authorities on the part of the court which the tribunal could properly exercise if the thing itself were still in the custody of the court. *The Palmyra*, 12 Wheat. 1; *The Wanata*, 95 U. S. 611; *The Steamer Webb*, 14 Wall. 406.

Fees and expenses of keeping the property having been paid, it is the duty of the marshal to surrender the property as directed in the order of release; and it is settled law that if any one, in defiance of the order, unlawfully detains the same he is liable to be proceeded against by attachment.   *The Towan*, 8 Jurist, 223; *The Tritonia*, 5 Notes of Cases, 111.

Concisely stated, the material facts as derived from the

allegations of the bill of complaint are as follows: 1. That a certain steamboat was with her cargo, consisting of eleven hundred and twenty bales of cotton, seized as enemy property. 2. That proceedings, on the 23d of March, 1865, were commenced against the property in the District Court for the Eastern District of Louisiana, to procure a decree of forfeiture of the property, the charge being that the cargo was obtained within territory occupied by armed public enemies. 3. That the person named in the bill of complaint appeared in the suit as claimant of the cargo, and obtained an order of the court that the cargo of cotton might be released to the claimant, he, the claimant, giving bond to the complainants in the sum of $350,000, with good and solvent security. 4. That the claimant on the following day, in pursuance of the order, filed the required bond to the amount specified in open court, duly executed by the claimant as principal and with sureties accepted by the court as satisfactory. 5. That the marshal on the same day, in compliance with the order of the court, released and delivered the cargo to the claimant. 6. That on the 10th of May following the District Court entered a decree in the suit dismissing the libel and ordered that the cargo seized be restored to the claimant, from which decree the complainants appealed to the Circuit Court. 7. That the Circuit Court on the 8th of June then next reversed the decree of the District Court and entered a decree condemning the steamboat and her cargo as forfeited to the United States, and condemning the claimant to pay to the complainants $204,982.28, with interest, and a decree in the usual form against the sureties. 8. That the decree last named is in full force, and that neither the claimant nor sureties have ever paid the same or any part thereof to the complainants. 9. *Nulla bona* having been returned upon the execution, the present bill of complaint was filed in the name of the United States; and the prayer is that the executors of Oakes Ames may be decreed to admit assets in their hands sufficient to pay and satisfy the aforesaid decree and interest, and that it be decreed that they shall pay the amount of the decree and interest to the complainants.

Certain other matters are also set forth in the bill of com-

plaint which it is alleged entitle the complainants to the relief prayed, of which the following are the most material: 1. That at the time of the seizure of the steamboat and her cargo, and at the time the bond for the release of the cargo was given, and at the time the decree was entered against the claimant and his sureties in the bond, the testator of the executors named as respondents and the other respondent named were partners of the claimant under the firm and style alleged in the bill of complaint, and that the partners in the course of the partnership business purchased the cargo of the steamboat for the benefit of the partnership, and that the other two partners well knew of the commencement of the suit by the complainants to procure a decree of forfeiture of the property, and that they directed the claimant to give the release bond in the name and style of the partnership as obligors, and that the copartners obtained possession of the cargo and sold the same, and received the proceeds to their own use as copartners. 2. That large sums of money, to wit, $21,963.72, paid for storage, internal revenue, and the charges of the treasury agent, were paid with the funds of the partnership with full knowledge of all the said copartners, as well as counsel fees and the expenses of defending the suit to condemn the property. 3. That the complainants at the time the release bond was executed had no knowledge that these parties were partners, and that neither the partnership nor the partner last named in the bill of complaint have sufficient goods or estate to pay the amount of the decree against the claimant and his sureties.

Service was made, and the respondent executors appeared and demurred to the bill of complaint, and on the same day the other respondent appeared, and he also filed a demurrer to the bill. Continuance followed, and at the next session of the court in the same term the Circuit Court entered a decree sustaining the demurrers and dismissing the bill of complaint. Prompt appeal was taken by the complainants in open court, and they now assign for error that the Circuit Court erred in sustaining the demurrers and in dismissing the bill of complaint.

Equitable relief is claimed by the complainants chiefly upon three grounds, each of which is attempted to be supported upon the theory that they have suffered a loss and that they have

not an adequate and complete remedy at law. Irrespective of the course pursued by counsel in the argument of the cause, the respective grounds of claim will be examined by the court in the following order, as the one best calculated to exhibit the controversy in its true light.

Throughout it may be considered that the complainants admit that they have no remedy at law, but they contend that they are entitled to equitable relief for at least three reasons: 1. Because the property seized as forfeited to the United States has been legally condemned, and that the principal and sureties in the stipulation for value given for the release of the same at the commencement of the proceedings in the admiralty court have become insolvent and unable to pay the amount of the decree recovered by the complainants in the admiralty court. 2. Because the other two partners named in the bill of complaint were each equally interested with the claimant in the property seized and condemned, of which the complainants had no knowledge; and that inasmuch as the property when released went into the possession of the partnership and was sold for the benefit of all the partners, the claim of the complainants is that they are entitled to equitable relief. 3. Because the estate of the deceased partner is liable for the whole decree; and inasmuch as his estate is insufficient to pay all his debts, the United States are entitled to maintain the bill of complaint to secure their preference.

Due seizure of the property was made and due proceedings were instituted in the Admiralty Court for its condemnation; and the allegations of the bill of complaint show that the person named was duly admitted to appear as claimant, and that the Admiralty Court on his motion passed the order that the property should be released upon his giving a bond to the complainants in the sum of $350,000, with good and solvent security, which is the usual order given in such cases.

Proceedings of the kind are usually adopted in all seizures under the revenue and navigation laws, as is well known to every practitioner in such cases. 1 Stat. 696, sect. 89; Rev. Stat. 938. Bond or stipulation with sureties for the discharge of the property seized is allowed in all revenue cases, except for forfeiture, and the better opinion is that even in seizures

for forfeiture the bond may be executed in the same manner by the claimant. Id., sects. 940, 941.

Pursuant to the known and well-recognized practice, the court allowed the claimant to give the bond with sureties approved by the court, and thereupon directed the marshal to surrender the property to the principal in the bond. Beyond all doubt, therefore, the claimant acquired the possession of the property lawfully and in pursuance of the order of the Admiralty Court.

Hearing was subsequently had; and the Admiralty Court entered a decree in the case dismissing the libel, and ordered that the property, consisting of the cargo of the steamboat, be restored to the claimant. Due appeal to the Circuit Court was entered by the libellants; and the record shows that the Circuit Court reversed the decree of the District Court, and adjudged and decreed that the steamboat and her cargo be condemned as forfeited to the United States. No appeal was ever taken from that decree, and the allegations of the bill of complaint also show that the Circuit Court entered a decree against the claimant and his sureties in the release bond or stipulation for value in the sum of $204,982.28 with interest and costs of suit.

Attempt is not made to call in question the jurisdiction of the Admiralty Court, nor of the Circuit Court in the exercise of its appellate power in the case. Nothing can be better settled, said Judge Story, than the proposition that the admiralty may take a fidejussory caution or stipulation in cases *in rem*, and that they may in a summary manner render judgment and award execution to the prevailing party. Jurisdiction to that effect is vested in the District Court, and for the purposes of appeal is also possessed by the circuit courts, both courts in such cases being fully authorized to adopt the process and modes of process belonging to the admiralty, and the district courts have an undoubted right to deliver the property on bail and to enforce conformity to the terms of the bailment. Authority to take such security is undoubted, and whether it be by a sealed instrument or by a stipulation in the nature of a recognizance, cannot affect the jurisdiction of the court. Having jurisdiction of the principal cause, the court must possess the

power over all its incidents, and may by monition, attachment, or execution enforce its decree against all who become parties to the proceedings. *Brig Alligator*, 1 Gall. 145 ; *Nelson* v. *United States*, Pet. C. C. 235.

Bonds given in such cases, says Dunlap, are to all intents and purposes stipulations in the admiralty, and must be governed by the same rules. Original cognizance in such cases is exclusive in the district courts; but the circuit courts, in the exercise of their appellate jurisdiction, possess the same power to the extent necessary in re-examining the orders and decrees of the subordinate court. Dunlap, Prac. 174 ; *The Peggy*, 4 C. Rob. 389 ; *The Ann Caroline*, 2 Wall. 558.

Such security was taken for the cargo seized in the District Court, and no review of that order was asked in the Circuit Court. Where an appeal is taken from the decree of the District Court, the *res* if not released, or the bond or stipulation for value, follows the cause into the Circuit Court, where the fruits of the property if not released, or the bond or stipulation for value, may be obtained in the same manner as in the court of original jurisdiction, the bond or stipulation being in fact nothing more than a security taken to enforce the final decree. *McLellan* v. *United States*, 1 Gall. 227.

It matters not, says the same magistrate, whether the security in such a cause be a bond, recognizance, or stipulation, as the court has an inherent right to take it and to proceed to render judgment or decree thereon according to the course of the admiralty, unless where some statute has prescribed a different rule. *The Octavia*, 1 Mas. 150 ; *The Wanata, supra.*

Securities of the kind are taken for the property seized for the value of the same when delivered to the claimant, and the stipulation will not be reduced if the property when sold brings less than the appraised value, nor can the court award any damages against the sureties beyond the amount of the stipulation, even if the amount of the stipulation is less than the decree. *The Hope*, 1 Rob. Adm. 155.

Authorities may be found which deny the power even of the Admiralty Court to recall the property for any purpose after the stipulation for value has been given and the property has been delivered to the claimants. *The Wild Ranger*, Brown &

Lush. 671; *Kalamazoo*, 9 Eng. L. & Eq. 557; s. c. 15 Jur. 885; *The Temiscouta*, 2 Spinks, 211; *The White Squall*, 4 Blatch. 103; *The Thales*, 10 id. 203.

Other decided cases, perhaps for better reason, hold that in case of misrepresentation or fraud, or in case the order of release was improvidently given without any appraisement or any proper knowledge of the real value of the property, 'it may be recalled before judgment where the ends of justice require the matter to be reconsidered. *The Hero*, Brown & Lush. 447; *The Union*, 4 Blatch. 90; *The Duchese*, Swabey, 264; *The Flora*, Law Rep. 1 Adm. 45; *The Virgo*, 13 Blatch. 255.

Suppose the power, in case of fraud, misrepresentation, or manifest error in the court, exists in the court of original jurisdiction, or even in the Circuit Court, inasmuch as the stipulation for value follows the appeal into that court, still it is clear that no other court possesses any such jurisdiction nor any power to re-examine the discretionary ruling of the admiralty courts in that regard. *Smart* v. *Wolff*, 3 T. R. 340; *Lord Camden* v. *Home*, 4 id. 382; *The Wanata*, *supra*; *Houseman* v. *The Schooner North Carolina*, 15 Pet. 40.

Even if the rule were otherwise, it would not avail the complainants in this case, as they never made any application either to the District Court or to the Circuit Court to recall the property, nor is it now pretended that the amount of the stipulation is not fully equal to the value of the cargo released, nor that the sureties were not perfectly solvent at the time the bond was executed. Nothing of the kind is alleged, and of course nothing of the kind is admitted by the demurrer.

Suitors in cases of seizures on waters navigable from the sea by vessels of ten or more tons burthen are saved the right of a common-law remedy where the common law is competent to give it. 1 Stat. 77.

Given as the bond was on the release of the cargo of cotton in a suit *in rem* for its condemnation, it became the substitute for the property; and the remedy of the libellants, in case they prevailed in the suit *in rem* for condemnation, was transferred from the property to the bond or stipulation accepted by the court as the substitute for the property seized. Common-law remedies in cases of seizure for forfeiture or to enforce a lien

are not competent to effect the object for which the suit is instituted, and consequently the jurisdiction conferred upon the district courts, so far as respects that mode of proceeding, is exclusive. Parties in such cases may proceed *in rem* in the admiralty; and if they elect to pursue their remedy in that mode, they cannot proceed in any other forum, as the jurisdiction of the admiralty courts is exclusive in that mode of proceeding, subject, of course, to appeal to the Circuit Court. *Leon* v. *Galceran*, 11 Wall. 185; *Steamboat Company* v. *Chase*, 16 id. 522; *The Belfast*, 7 id. 624.

Proceedings *in rem* are exclusively cognizable in the admiralty, and the question whether a case is made for the recall of property released under bond or stipulation in such a case must, beyond all doubt, be determined by the courts empowered to hear and determine the matter in controversy in the pending suit. Nor is there any thing unusual in the fact that other parties beside the claimant were interested in the property seized at the time the property was released and the bond for value taken in its place. *In the Matter of William Stover*, 1 Curt. C. C. 201; *The Adeline and Cargo*, 9 Cranch, 244.

Whenever a seizure takes place, it is the right of the owner to appear and file his claim, if he complies with the preliminary order of the court as to costs; but the claim is often made by the master of the vessel or the managing owner, and it may be made by an agent or the consignee, and in the case of a foreign ship it may be filed by the consul of the nation to which the ship belongs. Experience has approved the practice, as the security is rendered sufficient by the sureties; nor is the danger of loss from their insolvency much if any greater than what arises where the property is retained, from liability to decay or to destruction by fire or flood. Admiralty courts everywhere favor the practice, and the same is sanctioned to a very large extent by the acts of Congress. 9 Stat. 81; Rev. Stat., sect. 941.

Many of the preceding observations made to prove that the first ground of claim set up by the complainants cannot be sustained are equally applicable to the second, for the same purpose; but there is another answer to the second, which is

even more conclusive than any thing before remarked to show that the decree of the Circuit Court is correct.

Although the claimant is the sole principal in the bond, yet the allegations in the bill of complaint are that the other two partners were equally interested in the property, and that the claimant procured the release of the property, for the benefit of the copartnership ; and the complainants allege that the transaction should be viewed in all respects as if all the members of the firm had been principals in the bond, inasmuch as the property when released went into the possession of the firm and was sold for the benefit of all the partners. Concede what is not admitted, that evidence to prove that theory may be admissible, it is nevertheless true that the theory must be examined in view of the established fact that the Circuit Court entered a final decree on the bond against the principal and sureties for the whole value of the cargo which was seized and condemned, and the bill of complaint alleges that the decree of the Circuit Court is in full force and unreversed.

None of the authorities afford any countenance whatever to the theory that the property released can be recalled for any purpose after the property has been condemned and the libellants have proceeded to final judgment against the principal and sureties in the bond or stipulation for the release of the property seized. Difficulties of the kind, it would seem, must be insuperable ; but if they could be overcome, there is still another, which of itself is entirely sufficient to show that the second ground of claim is no better than the first.

Judgment has already been rendered against the claimant ; and even admitting that the other two partners may be treated as if they were joint principals in the bond given for the value of the property released, it is quite clear that the judgment against the claimant would be a bar to an action against the other partners upon the bond. Even without satisfaction, a judgment against one of two or more joint contractors is a bar to an action against the others, within the principle of the maxim *transit in rem judicatam*, the cause of action being changed into matter of record. *King* v. *Hoare*, 13 Mee. & W. 494.

Judgment in such a case is a bar to a subsequent action

against the other joint contractors, because the contract being joint and not several, there can be but one recovery. Consequently the plaintiff, if he proceeds against one only of the joint contractors, loses his security against the others, the rule being that by the recovery of the judgment, though against one only, the contract is merged and a higher security substituted for the debt. *Sessions* v. *Johnson*, 95 U. S. 347; *Mason* v. *Eldred*, 6 Wall. 231. From which it follows, if the theory of the complainants is correct that the bond is to be regarded as the joint bond of the three partners, that they are without remedy against the other two, as they have proceeded to final judgment against the claimant.

Neither of the other partners signed the bond but the complainants allege that the firm directed the claimant to give the bond for and in the name and style of their said partnership as obligors; to which it may be answered that if the firm gave such directions the claimant did not follow them, as the bond set forth in the record as an exhibit to the bill of complaint shows that it is the individual bond of the alleged senior partner. Nor do the complainants pretend that the other partners ever signed the instrument, but they contend that the demurrer admits every thing which they have alleged.

Matters of fact well pleaded are admitted by a demurrer, but it is equally well settled that mere conclusions of law are not admitted by such a proceeding. *Dillon* v. *Barnard*, 21 Wall. 430; *Ford* v. *Peering*, 1 Ves. Ch. 71; *Lea* v. *Robeson*, 12 Gray (Mass.), 280; *Redmond* v. *Dickerson*, 1 Stockt. (N. J.) 507; *Murray* v. *Clarendon*, Law Rep. 9 Eq. 17; *Nesbitt* v. *Berridge*, 8 Law Times, N. S. 76; Story, Eq. Plead. (7th ed.), sect. 452.

Facts well pleaded are admitted by a demurrer; but it does not admit matters of inference or argument, nor does it admit the alleged construction of an instrument when the instrument itself is set forth in the record, in cases where the construction assumed is repugnant to its language. Authorities to that effect are numerous and decisive; nor can it be admitted that a demurrer can be held to work an admission that parol evidence is admissible to enlarge or contradict a sealed instrument which has become a matter of record in a judicial proceeding. *Beck-*

*ham* v. *Drake*, 9 Mee. & W. 78; *Humble* v. *Hunter*, 12 Law Rep. Q. B. 315; *McArdle* v. *The Irish Iodine Company*, 15 Irish C. L. 146; *Sprigg* v. *Bank of Mount Pleasant*, 14 Pet. 201.

Mere legal conclusions are never admitted by a demurrer; nor would it benefit the complainants even if it could be held otherwise, as it must be conceded that the theory of the bill of complaint is that the liability of the three partners is a joint liability, and it is equally well settled that a judgment against one in such a case is a bar to a subsequent action against either of the others, as appears from the authorities already cited, to which many more may be added. *Robertson* v. *Smith*, 18 Johns. (N. Y.) 459; *Ward* v. *Johnson*, 13 Mass. 148; *Cowley* v. *Patch*, 120 id. 137; *Smith* v. *Black*, 9 Serg. & R. (Pa.) 142: *Beltzhoover* v. *The Commonwealth*, 1 Watts (Pa.), 126.

Where the contract is joint and several the rule is different, to the extent that the promisee or obligee may elect to sue the promisors or obligors jointly or severally; but even in that case the rule is subject to the limitation that if the plaintiff obtains a joint judgment he cannot afterwards sue the parties separately, for the reason that the contract or bond is merged in the judgment, nor can he maintain a joint action after he has recovered judgment against one of the parties, as the prior judgment is a waiver of his right to pursue a joint remedy. *Sessions* v. *Johnson*, *supra*.

Concede that, and still the complainants aver that they did not know, when they obtained their decree against the claimant and his sureties, that the property belonged to the partnership, or that the bond for value was in fact given by the claimant pursuant to the direction of the other partners.

Averments in a bill of complaint that the parties to a judicial proceeding understood that the legal effect would be different from what it really is, amounts merely to an averment of a mistake of law against which there can be no relief in a court of equity. *Hunt* v. *Rousmaniere's Administrators*, 1 Pet. 1.

Courts of equity may compel parties to execute their agreements, but they have no power to make agreements or to alter those which have been understandingly made; and the same rule applies to judgments duly and regularly rendered and in

full force.    1 Story, Eq. (9th ed.), sect. 121 ; *Bilbie* v. *Lumley*,
2 East, 183.

Fraud is not imputed, nor is it charged that there was any
mistake or misrepresentation.    Where there is neither accident
nor mistake, misrepresentation nor fraud, there is no jurisdic-
tion in equity to afford relief to a party who has lost his remedy
at law through mere ignorance of a fact, the knowledge of
which might have been obtained by due diligence and inquiry,
or by a bill of discovery.    *Penny* v. *Martin*, 4 Johns. (N. Y.)
Ch. 566 ; *Anderson* v. *Levan*, 1 Watts & S. (Pa.) 334.

Courts of equity will not grant relief merely upon the ground
of accident where the accident has arisen without fault of the
other party, if it appears that it might have been avoided by
inquiry or due diligence.    1 Story, Eq. (9th ed.), sect. 105.

Ignorance of the facts is often a material allegation, but it is
never sufficient to constitute a ground of relief, if it appears
that the requisite knowledge might have been obtained by
reasonable diligence.    Id., sect. 146.

Relief in equity will not be granted merely because a security
in an admiralty suit becomes ineffectual, if it appears that it
became so without fraud, misrepresentation, or accident, which
might have been prevented by due diligence.    *Hunt* v. *Rous-
manier's Administrators*, 2 Mas. 366 ; *Sedam* v. *Williams*, 4 Mc-
Lean, 51.

Having come to the conclusion that the alleged claim of
the United States is not well founded, the question of priority
becomes wholly immaterial.

*Decree affirmed.*

MR. JUSTICE BRADLEY dissented.