## THE VIGILANT.

(District Court, N. D. New York. December 21, 1909.)

ADMIRALTY (§ 54*)—EFFECT OF STIPULATION FOR RELEASE OF VESSEL—SUBRO-
GATION OF SURETY TO LIEN OF LIBELANT.

A stipulation for the release of a libeled vessel takes the place of the
vessel, so far as the claim of the libelant is concerned, and the surety can-
not, by taking an assignment of such claim, keep it alive as a lien on the
vessel as against a prior mortgagee.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 443; Dec. Dig.
§ 54.*]

In Admiralty. Suits by Nash Bros. & Co. and others against the
steam tug Vigilant. Petition by the Title Guaranty & Surety Com-
pany to share in proceeds of vessel. Application denied.

George E. Dennison, for petitioner.
Brown, Ely & Richards, opposed.

RAY, District Judge. On or about the 1st day of August, 1908, the
steam tug Vigilant, being in the port of Ogdensburg and in need of
repairs, requested Nash Bros. & Co., a copartnership consisting of
John Hannan and Russell K. Nash, to furnish certain materials and
do certain work as machinists in making such repairs. Nash Bros. &
Co. complied with the request. August 27, 1908, there was due and
unpaid to Nash Bros. & Co. for same the sum of $1,891.22, and that
company filed a lien on the vessel, her tackle, etc., to secure the pay-
ment of such sum, under and pursuant to the laws of the state of New
York. Immediately thereafter said Hannan and Nash filed a libel in
the District Court, Northern District of New York, against such
vessel, her tackle, etc., and all persons intervening, for the recovery
of said sum, and a monition and attachment were issued, and the
marshal attached and seized the vessel. Thereafter a stipulation or
bond was filed indemnifying said Nash Bros. & Co. in the sum of
$1,891.22, the amount of the libel, and such vessel was thereupon re-
leased. The petition alleges:

"That your petitioner, through the misconduct of its agent and attorney, be-
came the stipulator therein."

Thereafter the Galvin Transportation Company intervened and filed
an answer to such libel. Thereafter Nash Bros. & Co. filed a reply and
amended libel. Thereafter the evidence on the part of the libelant was
taken and filed, but the said claimant has made default. Thereafter
several libels were filed against the said vessel, steam tug Vigilant, by
divers parties. Such proceedings were thereupon had that such ves-
sel was sold, and $11,900 realized, and such proceeds were duly de-
posited. Thereafter a consolidated monition was issued, consolidating
said several libels, and the issues were sent to a commissioner to take
the evidence. After payment of the amount of all such libels, in-
cluding costs, etc., there will remain, says the petition, a sum "more
than sufficient to pay and discharge the claim of Nash Bros. & Co."
The claim of Nash Bros. & Co. has been assigned to the Title Guar-

anty & Surety Company, the petitioner, which is now the holder of same under such assignment.

George Nestor and others hold and own a certain mortgage lien on such vessel, her tackle, etc., and claim such balance under and by virtue of such mortgage and mortgage lien; but the petitioner, said stipulator, or surety, insists that the claim of said Nash Bros. & Co. as matter of law has priority to such surplus over such mortgage lien. The mortgage was prior to the Nash Bros. & Co. claim and is stated to be a purchase-money mortgage.

The petitioner insists that this court in admiralty is a court of equity; that the property of the claimant went to enhance the value of the steam tug Vigilant, and that, but for such expenditure in repairs, etc., by Nash Bros. & Co., such vessel was practically worthless; that for this reason this court may place the claim of Nash Bros. & Co., now assigned to the surety on the bond given to secure its payment and release the vessel, ahead of the mortgage lien.

When the owners of the Vigilant procured and gave the bond in the usual form, with the Title Guaranty & Surety Company as surety, the vessel was released from the custody of the marshal and engaged in navigation until later arrested in the subsequent libel proceedings. The Vigilant was arrested after release on the bond upon the claim of Patrick Hackett Hardware Co., which did not proceed to a decree; but a decree was entered in the case of the claim of Fitzgibbons Boiler Company. In the suit of said last-named company said George Nestor and others filed an intervening libel, setting up their purchase-money mortgage of $15,000 given by the Galvin Transportation Company, the then owner of the vessel, and on which was then due some $9,471, with interest from May 15, 1909. The Galvin Transportation Company filed an answer to the Nash Bros. & Co. libel, but by reason of the insolvency of the Galvin Transportation Company no defense has been made to the suit of Nash Bros. & Co.; and George Nestor and others proceed on the assumption that the usual decree has been or will be made in the suit of Nash Bros. & Co.

The bond of the owners, with the Title Guaranty & Surety Company as surety, was in the usual form, with the usual condition that the owners would pay any decree that might be rendered in this court, to wit, the said claim of Nash Bros. & Co., the identical claim later assigned to said the Title Guaranty & Surety Company. That bond was given to secure the release, and did secure the release, of the steam tug Vigilant, her tackle, etc., and she proceeded on her voyage.

The Title Guaranty & Surety Company seems to claim that having become surety for the owners of the vessel, obligated to pay the claim of Nash Bros. & Co., a lien prior in rank, but not in date, to that of George Nestor and others, it might secure and protect itself, as against the owners of the mortgage lien, by taking an assignment of the claim it agreed to pay in case the owner of the vessel did not, and that, so far as the owner of the mortgage lien is concerned, it takes the place and is subrogated to the rights of Nash Bros. & Co. It may be assumed that the holder of a valid mortgage on such a vessel may take it at any time on his mortgage and hold it is against the

owner. The mortgagee has it in his power to stop navigation by that vessel, and stop the incurrence of further liens or charges which will take precedence to his. If the owner incurs liability, and a libel is filed, and the vessel is seized, and no bond is given, the mortgagee may pay the amount for which the libel is filed, with costs, etc., and take the vessel. In such case it is beyond the power of the owner to subject the vessel to further liability by way of subsequent libel claims. If a libel is filed, and the vessel seized, and the bond is given, the vessel is released, and further libel liens may be incurred.

When a libel is filed, and a vessel is seized, and the owner gives a bond, with surety, that the claim shall be paid, it seems to me that the bond takes the place of the vessel; that the owner and surety are in place of the vessel so far, at least, as that claim is concerned; and that the surety, having promised to pay it in case the owner does not, cannot, by taking an assignment thereof, keep it alive as a lien on the vessel as against a prior mortgage. The bond being given and the vessel released, the mortgagee has the right to assume that the claim for which she was libeled has been or will be paid by the owner or his surety. That the bond or stipulation is a substitute for the property seized and released is settled. United States v. Ames, 99 U. S. 35, 36, 42, 25 L. Ed. 295; The Oregon, 158 U. S. 186, 206, 15 Sup. Ct. 804, 39 L. Ed. 943; The Palmyra, 12 Wheat. 1, 10, 6 L. Ed. 531, cited in The Oregon, 158 U. S. supra, page 206, 15 Sup. Ct., page 812 (39 L. Ed. 943); 2 Rose's Code Fed. Proc., § 1216, (c), (d), also pages 1175, 1176; The Haytian Republic, 154 U. S. 118, 127, 14 Sup. Ct. 992, 38 L. Ed. 930; In re Morrison, 147 U. S. 14, 34, 35, 13 Sup. Ct. 246, 37 L. Ed. 60. The remedy of the libelant was transferred from the vessel to the bond or stipulation given as a substitute. United States v. Ames, supra, 99 U. S. page 42, 25 L. Ed. 295. In 2 Rose's Code, it is said (page 1141):

"The vessel returns to the claimant, subject to the liens of all who were not parties to the action before the discharge was made"—citing cases.

Probably there may be a subrogation in favor of the sureties to the claim of the libelant against their principal; but this can be done only after payment of the decree, and must be confined and limited strictly to the rights of the libelant against the claimant personally. The vessel is not affected. The bond releases the vessel for all purposes of the suit. This was held in The Madgie (D. C.) 31 Fed. 926, 928, where the court said:

"In addition to this correction of the previous decree, petitioners pray that they be subrogated to the rights of the libelant to the amount they have properly paid in this cause. This will be granted, but the subrogation must be limited strictly to the rights of libelant against the claimant personally, and the vessel is not affected. The bond has released the vessel for all purposes of this suit. Carroll v. The Leathers, Newb. Adm. 432 [Fed. Cas. No. 2,455]; Roberts v. The Huntsville, 3 Woods, 386 [Fed. Cas. No. 11,904.]"

The decision in The Evangel (D. C.) 94 Fed. 680, 681, 682, seems decisive. There the surety sought subrogation to the rights of the libelant, whose claim he had paid, as against prior mortgages, and claimed precedence to such mortgage liens. The court said:

"Since the sale of the vessel, the above-named surety company has paid the sums decreed against it in full, aggregating an amount exceeding the balance in the registry, and it is now before the court asking for said balance. The argument made in its behalf is founded upon the theory that, having secured the release of the vessel, and afterwards paying demands which were originally enforceable by process in rem, it is, according to principles of equity, entitled to be subrogated to the rights of the original creditors as lienholders, and to claim the money in the registry in lieu of the liens upon the ship, which were displaced by giving the several release bonds above mentioned. Each of the other interveners above named is the owner of a mortgage upon the vessel, given prior to the commencement of this suit, and they claim that the remnant of the fund should be paid to them in satisfaction pro tanto of the debts secured by their mortgages. Whether or not the equitable doctrine of subrogation has any place in admiralty practice is not a question which must necessarily be decided in this case, because the surety company in whose behalf the doctrine is invoked will not present itself in a more favorable attitude for the purpose of claiming the fund in court, if the doctrine of subrogation shall be applied in this case, than it will otherwise occupy. According to the rule in equity, payment of the debt of another who is primarily liable under force of necessity, or compulsion, is essential to the right of subrogation, and a person, by his own voluntary act in becoming surety for a debtor, does not become subrogated to the rights of the creditor. The only change effected by the giving of the release bonds was to extinguish the creditors' liens upon the ship, and to substitute in place of the ship the personal security of the bonds. Subrogation could only take place when the surety company paid the amounts due to the creditors, and it could only acquire the rights of the creditors existing at the time of the payments; that is, the personal obligation of the signers of the bond. * * * However, all liens upon a vessel, of every description, whether impressed by the general maritime law or local statutes, or created by bonds or mortgages, are completely and finally extinguished by a sale of the vessel pursuant to the decree of a court of admiralty in a suit in rem. In this case the rights of the parties now before the court become definitely fixed by the sale of the vessel. After the sale, no lien for a pre-existing debt could be transferred to the surety company, or revived or enforced. The case may be summarized thus: The fund in court stands in place of the ship. It is insufficient to pay in full the debts for which liens attached to the ship before the sale. Therefore it all belongs to lien creditors. The liens in favor of those creditors who were paid by the surety company were displaced by the release bonds given for that purpose by the surety company. No lien in favor of the surety company for money advanced to pay lien creditors ever attached to the ship, because the money was not advanced until after the ship was sold. The mortgage liens were existing before and at the time of the sale. Therefore the mortgages are entitled to the balance in the registry."

See, also, The Willamette Valley (D. C.) 76 Fed. 838, 842, 843; The Lottawanna, 21 Wall. 558, 22 L. Ed. 654.

By no process of assignment or equity can the lien of the libelant be kept alive as a lien on the released vessel after release, or the proceeds thereof after sale, in favor of the sureties as against a prior mortgage.

Application denied.