## THE I. F. CHAPMAN.

(Circuit Court of Appeals, First Circuit. April 4, 1917.)

No. 1201.

1. SHIPPING ⬿86(2)—LIABILITY OF VESSELS FOR TORTS—INJURY TO STEVEDORE.

Evidence held to sustain a finding by the trial court, which heard the witnesses, that the injury of libelant, employed as a stevedore in discharging a coal barge, by falling from a stanchion ladder leading down to the hold by reason of the breaking of a spike or handhold thereon, was due to the negligence of the owner in failing to cause the ladder to be properly inspected and kept in repair.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 356, 357.]

2. ADMIRALTY ⬿82, 118—APPLICATION FOR REHEARING—DISCRETION OF COURT.

An application, made six months after the hearing in a suit in admiralty for a personal injury, to reopen the same to admit further evidence on the question of damages, was addressed to the discretion of the court, and its action thereon cannot be reviewed by an appellate court.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 674, 676–678, 758–775, 794.]

3. ADMIRALTY ⬿57—SUITS IN REM—STIPULATION FOR RELEASE OF VESSEL—POWER TO ORDER REARREST.

Where, on the institution of a suit in rem for a personal injury, by agreement a so-called "stipulation for value" was given by claimant without an appraisal to avoid the arrest of the vessel, the court had power to subsequently order her arrest, or the giving of a stipulation in a larger amount, and to enter a decree for a larger sum than covered by the first stipulation, where it did not appear that it exceeded her actual value, or that the rights of claimant or third persons were prejudiced thereby.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 452–478.]

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the District of Rhode Island; Arthur L. Brown, Judge.

Suit in admiralty by Jacob Kazarian against the barge I. F. Chapman, Thomas J. Scully, claimant. Decree for libelant, and claimant appeals. Affirmed.

For opinion below, see 215 Fed. 127.

Frank V. Barns, of New York City (James J. Macklin, of New York City, on the brief), for appellant.

Frank Healy, of Providence, R. I. (George T. Marsh, of Providence, R. I., on the brief), for appellee.

Before DODGE and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

DODGE, Circuit Judge. Kazarian, the appellee, filed his libel February 1, 1913, against this barge, to recover for personal injuries alleged to have been received on December 26, 1912, while at work on board her as one of a number of stevedores engaged in discharging a cargo of coal at Wilkesbarre Pier, in East Providence, R. I. He alleged that through the breaking or giving way of a spike or handhold, forming part of a stanchion ladder whereon he was descending into the barge's hold, he fell about 15 feet, struck the keelson, and was "severely and permanently injured in his back, spine, and nervous system." He alleged that the spike or handhold was defective and insufficient, and that its condition was due to the owner's negligence.

The libel alleged $10,000 as the amount of his damages. The usual warrant and monition issued on the same day, but by a stipulation, also that day filed, actual arrest of the barge was waived on the libelant's behalf, provided her owner filed "a claim and stipulation in the sum of $6,000."

On the owner's behalf the claim was filed February 5, 1913, and on February 18, 1913, two stipulations, with surety, one for costs in the sum of $250, the other in the sum of $6,000, entitled "stipulation for value," and reciting that the issue of the process had been waived in consideration of the filing, besides the above claim, of—

"stipulations for costs and value, the latter in the sum of $6,000, the agreed value thereof" (i. e., said barge).

The condition expressed in the latter stipulation was that the claimant and surety should abide by all orders and decrees of the court and pay the amount awarded by final decree. Upon the stipulation appeared the following, signed by the libelant's proctor, and dated February 18, 1913:

"The value of said barge is hereby fixed for the purpose of bonding in this suit at the sum of $6,000, and the foregoing stipulation is approved as to form, amount, and sufficiency of surety."

An answer to the libel having been filed May 31, 1913, the District Court, after a hearing upon the pleadings and evidence from both sides, on June 25, 1914, determined the question of liability in the libelant's favor, and ordered the case to stand for further hearing upon the amount of damages. Such further hearing was had before the

court April 26 and 27, 1915. Before the hearing began the court heard, but took no action upon, a motion, filed by the libelant April 20, 1915, to amend by substituting $20,000 for $10,000 as the amount claimed in the libel.

On May 17, 1915, the libelant filed a petition asking that the claimant be ordered to furnish additional security to the amount of $14,000, and for the arrest of the barge unless such security was furnished. On November 22, 1915, the court ordered the barge arrested and held until the claimant should file a stipulation with sureties in $10,000, or until her value should be determined and her release ordered. A warrant and monition issued accordingly, and the barge was arrested by the marshal. On December 3, 1915, the claimant filed another stipulation, also entitled "Stipulation for Value," in the sum of $10,000, conditioned upon the payment by the claimant or surety of such amount as should be awarded by final decree, not exceeding $10,000.

The claimant had previously moved, November 20, 1915, to reopen the hearing on damages for further evidence. This motion was denied February 26, 1916, on which day the court also entered its final decree fixing the libelant's damages at $8,000, ordering that he recover that sum, with costs, and further ordering the issue of execution against the stipulators for value on behalf of said barge, unless an appeal should be taken within 10 days, or said stipulators for value should cause the engagement of their stipulation to be performed. From said decree the claimant took this appeal.

[1] 1. The opinion of the District Court on the question of liability is dated June 25, 1914. The following, in substance, were the conclusions reached upon the evidence before the court, which was voluminous and conflicting: The libelant's fall from the stanchion ladder was due to the giving way under his grasp of an iron spike or handhold therein. The ladder was part of the barge's permanent equipment. There was an old and rusty break or flaw in the spike or handhold, which caused it so to give way. No repairs appeared to have been made upon the ladder when the barge was last overhauled six months before, nor any sufficient inspection or repairs since said overhaul. The above defect could not be regarded as having come into existence so recently that there had been no opportunity to discover it. While there was evidence that portable ladders, suitable for going down into the hold, had been provided by the barge for the stevedores' use, and while no refusal was proved, as claimed by the libelant, to let said ladders be used in discharging this cargo; in view of a previous general practice by the stevedores to use the stanchion ladders while discharging this and other coal cargoes from this and other barges at the same wharf, found by the court to have been followed with the master's knowledge, the barge's owner was bound to use reasonable care that said ladders should be in proper condition for such use as the stevedores might make of them. The barge was therefore liable for the libelant's injuries so far as caused by his fall.

The appellant contends that the evidence did not justify the above conclusions or any finding that the libelant's fall and injury were due to negligence on his part as owner of the barge. We are unable, how-

ever, upon examination of the evidence, to find sufficient reason for disapproving any of the above conclusions as clearly wrong, reached as they had been by the District Court, after hearing all the most important witnesses on both sides testify in person, and weighing their conflicting statements.

[2] 2. From the opinion on assessment of the libelant's damages, dated February 17, 1916, it appears that the following, in substance, were the conclusions reached by the District Court: The claimant having had from June 25, 1914, until April 26, 1915, to prepare his evidence on the question of damages, and having closed his case May 25, 1915, without requesting further time or further hearing, could not be granted a reopening of the case for further evidence upon the grounds set forth in his motion of November 20, 1915, on the accompanying affidavits. These disclosed no excuse for the failure to make full investigation before trial, and set forth no additional evidence, except such as was merely cumulative, and not such in its nature as could substantially modify the assessment based upon the evidence heard. Upon that evidence, the libelant had suffered an injury to the spine which would permanently incapacitate him from such active physical labor as had been involved in his former employment, and would destroy his earning capacity in that employment. He still possessed, however, enough physical capacity and intelligence to be capable of earning money by light work, as he had in fact done since his accident, as timekeeper or keeping a small shop.

The claimant contends that the award of $8,000 was excessive. Regarding the libelant's actual condition and the extent to which recovery of his capacity to work might be expected, there was conflicting expert evidence before the court. There was also evidence tending to show that he had actually done things which, according to the opinions at the hearing of certain experts called on his behalf, he would never be able to do. The libelant, however, testified in person before the court, as did all the witnesses at the hearing on damages. Under the circumstances, nothing which the claimant has urged against the award would justify us in pronouncing it clearly excessive. Whether or not to reopen the hearing for further evidence, upon an application first made six months after the hearing had been closed, was clearly discretionary with the court, and its action cannot be reviewed here by assignment of error.

[3] 3. The appellant contends that the court was without jurisdiction on November 22, 1915, to order the barge arrested and to require the $10,000 stipulation as the condition of her release from such arrest. He contends that, after the "stipulation for value" in $6,000 and the stipulation for costs had been given, in 1913, these were "all that was within the jurisdiction of the court, and that the entry of a decree for any larger amount was error."

That the barge was within the Rhode Island district when the stipulations of 1913 were given, and also within said district when her arrest was ordered 2½ years later, in 1915, is not disputed. Since her regular employment appears to have been in making successive trips from coal ports to the same wharf in Providence, it may be assumed

that she had, during the above interval, repeatedly departed from and returned within said district.

There is no suggestion that during said interval there had been any change in the barge's ownership, or in the claimant's position with regard to her, or that any intervening rights in favor of third parties had meanwhile accrued against her, such as might have made her arrest in 1915 involve inequitable or unjust results. The question as to the court's right or power then to order her arrest arises, therefore, between the libelant and the barge's owner alone; and it involves only the same considerations, and no others, which would have been involved, had the question been raised by application for her arrest on the same grounds within a week or a month after the stipulations of 1913 had been given.

Though called a "stipulation for value," the stipulation in $6,000 then given can be regarded as such only as between the parties, and because of their agreement that it might be so treated "for the purpose of bonding." The suit was not one involving the possession or condemnation of the entire vessel, nor does the recovery sought appear to have exceeded her value. There is no suggestion that her value either in 1913 or 1915 was less than the amount of recovery allowed by the final decree. There has never been any application to have her actual value fixed by the court.

The general rule, no doubt, is that, after the release upon stipulation of a vessel arrested in an admiralty suit in rem, she cannot again be arrested in the same suit or upon the same cause of action. Although this rule has been sometimes stated as if it admitted of no exception, that it does not absolutely preclude the court from ordering such rearrest when necessary to secure complete justice between the parties, and when no substantial right of the claimant is thereby prejudiced, seems to us sufficiently recognized. The authorities which hold "that in case of misrepresentation or fraud, or in case the order 'of release was improvidently given without any appraisement or any proper knowledge of the real value of the property, it may be recalled before judgment where the ends of justice require the matter to be reconsidered," appear to have been regarded by the Supreme Court as having the better reason in U. S. v. Ames, 99 U. S. 35, 42, 25 L. Ed. 295. See, also, The Wanata, 95 U. S. 600, 611, 24 L. Ed. 461; The Haytian Republic, 154 U. S. 118, 126, 14 Sup. Ct. 992, 38 L. Ed. 930; The Three Friends, 166 U. S. 1, 68, 17 Sup. Ct. 495, 41 L. Ed. 897 (in which an order for the release on stipulation of a vessel libeled for violation of the neutrality laws was disapproved and its recall directed). We are of opinion that, under the circumstances of this case above stated, the court had discretionary power to order the arrest, or rearrest, in order to relieve the libelant against an inadvertent and mistaken agreement purporting to fix the amount of the security without an appraisal; there being no claim that the increased stipulation ordered exceeded the vessel's value. In The Iris, 100 Fed. 104, 114, 115, 40 C. C. A. 301, this court has held it within the power of the District Court to order reduction in amount of an admiralty stipulation given to release a vessel from arrest, without appraisal, if satisfied that it was mistakenly given in an amount exceeding her true value.

If, as we think, the court had power to order the arrest, no abuse of discretion in its exercise of the power appears, and therefore no error reviewable here.   U. S. v. Ames, 99 U. S. 35, 42, 25 L. Ed. 295.

We find no assignment of error, not in effect disposed of by what is said above, requiring special comment.

The decree of the District Court is affirmed, with interest, and the appellee recovers his costs of appeal.