## WESSON et al. v. CRAIN.

District Court, E. D. Arkansas, Jonesboro Division.

June 27, 1947.

House, Moses & Holmes, Horace Jewell, and R. C. Butler, all of Little Rock, Ark., for plaintiffs.

Reid & Roy, of Blytheville, Ark., and Daggett & Daggett, C. E. Daggett, and John L. Daggett, all of Marianna, Ark., for defendant.

TRIMBLE, District Judge.

This action was begun by Victoria Wilson Wesson and Marie Wilson Howells, who were daughters of R. E. L. Wilson, formerly of Mississippi County, Arkansas, and now deceased, against J. H. Crain, who is Trustee of Lee Wilson & Company, a business trust, created by act of the shareholders. Mrs. Wesson and Mrs. Howells are shareholders in the Trust, and the other shareholders are the heirs of R. E. L. Wilson, or those holding through them.

R. E. L. Wilson during his lifetime had accumulated a vast landed estate of valuable lands in Mississippi County, Arkansas. Prior to February 5, 1917, the greater part of this land was just being developed and a large part was unimproved. In developing the properties he had also accumulated quite a large personal estate, which, in part,

consisted of partnerships with various individuals, who were conducting mercantile and manufacturing businesses. Prior to 1917 Mr. Wilson had organized a corporation under the name of Lee Wilson & Company, of which he owned all the stock, except qualifying shares. To this corporation he had conveyed the greater part, if not all, of his property, real, personal and mixed, including his interest in the various business partnerships. For reasons not relevant here he decided to dissolve the corporation, and after it had conveyed all of the property to him individually, he surrendered the charter, and then executed a declaration of trust, dated February 5, 1917. This was amended in 1919, but no changes made which need be noted here.

Under the terms of the declaration of trust, the legal title to the property included in the declaration was vested in him absolutely, with full and absolute power to manage, control, sell, assign, pledge, hypothecate, mortgage, convey, and otherwise dispose of the same as fully and completely as if he were the sole and absolute owner of the legal and equitable title thereto. It is neither necessary nor expedient to set forth the provisions of the different sections, but it is sufficient to say that the power which Mr. Wilson, as the absolute owner of the property, conferred on himself as trustee, was plenary to the fullest extent and as broad and comprehensive as the English language could make it, and was unfettered and without limitation. The language is susceptible of no other construction than that he intended to keep absolute, unqualified, and unlimited control over the property, with free, unfettered, and unlimited right of management, control disposal, sale and encumbrance of the property. While it is true that he gave to his wife and each of his three children certificates of interest in the trust estate to the extent of one-fifth interest each, and reserved only one-fifth to himself, he gave this interest to them subject to the provisions of the trust declaration, and they took nothing more. By meticulously careful language he made it legally impossible for them to interfere in any way with his using his own judgment, and working his own

will with the assets and property belonging to the trust estate. He provided for the continuance of the trust for twenty-one years, and the method for selection of a successor trustee upon his death.

Mr. Wilson operated under the declaration of trust of 1917–1919 until the date of his death, which occurred on September 27, 1933. For many years prior to the date of Mr. Wilson's death, the defendant J. H. Crain had been Mr. Wilson's trusted employee, and the evidence shows had in fact been and acted as co-manager of the trust estate.

On October 5, 1933, which was shortly after the death of Mr. Wilson, a meeting of the certificate holders was had, in which all of the certificate holders were present or represented by duly constituted proxies. At this meeting J. H. Crain and R. E. L. Wilson, Jr., were elected trustees in succession under the declaration of trust, for the period ending February 1935. They were re-elected each year at varying salaries and compensations until the meeting of the certificate holders in February, 1937. As such trustees they had exactly the same power and authority as Mr. R. E. L. Wilson had enjoyed and exercised in his life time.

At the meeting of February 24, 1937, which occurred just before the trust would have expired under its terms in February, 1938, there was presented a proposed new declaration of trust, which had been prepared by the attorney at the request and behest of the certificate holders, which contained all of the provisions of the 1917-1919 declaration of trust, with slight modifications and with additional powers in the trustee. Neither the modifications nor additions bear upon the question here pending. All the beneficial shareholders were present in person, except one, and she was present by proxy. The proposed declaration of trust was approved and accepted. By proper action at this meeting the shareholders exercised the power vested in them by Section 15 of the 1917-1919 declaration of trust and extended the term and life of the trust for an additional twenty-one years. At this meeting the defendant J. H. Crain,

and R. E. L. Wilson, Jr., were again elected trustees.

Since the meeting of February 24, 1937, the trustees have operated the business of the trust, and have administered the affairs of the trust estate until the date of filing the complaint in the action.

Defendants have filed a motion to dismiss, alleging (1) that the beneficial shareholders, who are not made parties, and are not present in this action, are indispensable parties, and cannot be made parties without depriving the court of jurisdiction over the parties to the action, and (2) that Mrs. Wesson, in her separate allegations, does not state facts on which the court can give relief.

At the time of the filing of this action, the shareholders and their interest, with their residence, was as follows:

Residents of Arkansas:

| R. E. L. Wilson, Jr., | 1,829-4/9 | shares, |
| Joe Wilson Nelson, | 1,000 | shares, |
| Frank Lee Wesson, | 300 | shares, |
| Mrs. R. E. L. Wilson, Jr., | 30 | shares, |
| S. A. Reginold, Administrator, | 2,666-6/9 | shares, |

a total of 5,826-1/9 shares, or 58.26% of the total shares.

Non-residents of Arkansas:

| R E. L. Wilson, III, | 330 | shares, |
| Frank O. Wilson, | 180 | shares, |
| Mrs. Frank O. Wilson, | 20 | shares, |
| Mrs. R. E. L. Wilson, III, | 20 | shares, |
| R. E. L. Wilson, IV, a minor, | 25 | shares, |
| Michael Evans Wilson, a minor, | 10 | shares, |

a total of 585 shares, or 5.85% of the total shares.

The plaintiff, Mrs. Wesson, owns 2144-4/9 shares, and Mrs. Howells 1444-4/9 shares, a total of 3588-8/9 shares, or 35.89% of the total shares.

There is, therefore, only 35.98% of the beneficial ownership represented in this action, leaving 64.11% unrepresented, with 58.26% being held by residents and citizens of the state of Arkansas, the state of the residence and citizenship of J. H. Crain the defendant, and 5.85% being held by shareholders, who are residents of states other than Arkansas, who, therefore, are beyond the reach of the process of this court.

The plaintiffs allege the violation by the defendant J. H. Crain of his fiduciary obligations under the trust, setting out the particulars in which it is charged he has violated his trust. The complaint seeks only the removal of the defendant as Trustee, does not ask an accounting or the dissolution of the trust. In addition Mrs. Wesson also made allegations and asked relief which applied only to her, and which will be noted when that issue is passed on later in this memorandum.

Defendant filed a motion to dismiss the complaint (1) for want of indispensable parties and (2) failure to state grounds upon which this court can grant relief.

Counsel for the parties have filed elaborate briefs, have argued the motion pro and con at great length, and the cause is now submitted to the court for disposition on the motion to dismiss.

It is conceded by the parties to this action that this court sitting as a court of equity has inherent power over trusts, with power to remove a trustee for violations of his fiduciary obligations. While defendant concedes the inherent power of the court, and its inherent jurisdiction over trusts, he raises the question as to how this power and jurisdiction are to be exercised. Upon the issue of the removal of the trustee, and the motion to dismiss, the sole question to be decided is whether the other shareholders, or beneficiaries of this trust, are indispensable parties.

Rule 19 of the Federal Rules of Civil Procedure, following Section 723c, title 28 U.S.C.A., as to joinder of parties, provides as follows:

"(a) Necessary Joinder. Subject to the provisions of Rule 23 and of subdivision (b) of this rule, persons having a joint interest shall be made parties. * * *

"(b) Effect of Failure to Join. When persons who are not indispensable, but who ought to be parties if complete relief is to be accorded between those already parties, have not been made parties and are subject to the jurisdiction of the court as to both service of process and venue and can be made parties without depriving the court of jurisdiction of the parties before it, the court shall order them summoned to appear in the action. The court in its discretion may proceed in the action without making such persons parties, if its jurisdiction over them as to either service of process or venue can be acquired only by their consent or voluntary appearance or if, though they

are subject to its jurisdiction, their joinder would deprive the court of jurisdiction of the parties before it; but the judgment rendered therein does not affect the rights or liabilities of absent persons."

It is conceded by the parties to this action that none of the absent shareholders can be made parties to this action without depriving the court of jurisdiction of the parties before it, and that some of them are non-residents of the State of Arkansas.

This leaves the issue in this shape: Are the absent shareholders, who are parties to the executory contract creating the trust, indispensable parties to this action to remove the trustee, for alleged violation of his fiduciary obligations, where the complaint asks no accounting, or relief other than the removal of the trustee?

What is the subject matter involved in this action? That is the first inquiry the court must make in determining whether the absent parties are indispensable parties to this action. In determining that in any case the court must look to the facts in the particular case under examination. In this case it would serve no useful purpose to review, discuss and distinguish the numerous cases cited by counsel. Here there is one thing certain, and which cannot be gainsaid. There is involved here an executory contract which creates a trust relationship between all of the beneficial shareholders of the trust and the defendant as trustee.

■ What are the rights of parties to an executory contract? First, is to have the contract performed according to its terms, provisions and intent, by the parties who made the contract.

In the case of Mallow v. Hinde, 25 U.S. 193, 194, 195, 12 Wheat. 193, 194, 195, 6 L.Ed. 599, the Supreme Court said:

"* * * How can a court of equity decide that these contracts ought to be specifically decreed without hearing the parties to them? Such a proceeding would be contrary to all the rules which govern courts of equity, and against the principles of natural justice. * * *

"* * * In this case, the complainants have no rights separable from, and independent of, the rights of persons not made parties. The rights of those not before the court lie at the very foundation of the claim of right by the plaintiffs, and a final decision cannot be made between the parties litigant, without directly affecting and prejudicing the rights of others, not made parties.

"We do not put this case upon the ground of jurisdiction, but upon a much broader ground, which must equally apply to all courts of equity, whatever may be their structure as to jurisdiction. We put it on the ground, that no court can adjudicate directly upon a person's right, without the party being either actually or constructively before the court. * * *"

■ The case of State of Minnesota v. Northern Securities Co., 184 U.S. 199, 22 S.Ct. 308, 322, 46 L.Ed. 499, sets forth very clearly the principle governing courts of equity on the question of indispensable parties. In that case the Supreme Court said:

"The general rule in equity is that all persons materially interested, either legally or beneficially, in the subject-matter of a suit, are to be made parties to it, so that there may be a complete decree, which shall bind them all. By this means the court is enabled to make a complete decree between the parties, * * * and to make it perfectly certain that no injustice is done, either to the parties before it, or to others who are interested in the subject-matter, by a decree which might otherwise be granted upon a partial view only of the real merits. When all the parties are before the court, the whole case may be seen; but it may not, where all the conflicting interests are not brought out upon the pleadings by the original parties thereto.

"The established practice of courts of equity to dismiss the plaintiff's bill if it appears that to grant the relief prayed for would injuriously affect persons materially interested in the subject-matter who are not made parties to the suit is founded upon clear reasons, and may be enforced by the court, sua sponte, though not raised by the pleadings or suggested by the counsel. Shields v. Barrow, 17 How. 130, [139], 15 L.Ed. 158; Hipp v. Babin, 19 How. 271, 278, 15 L.Ed. 633, 635; Parker v. Winnipiseogee Lake Cotton & Woolen Co., 2 Black. 545, 17 L.Ed. 333."

The doctrine thus reiterated in that case is still the law and no case has been found to controvert this statement.

Plaintiffs in their brief have cited and quoted from many cases to support their contention. They begin with the early case of Elmendorf v. United States, 23 U.S. 152, 165, 10 Wheat. 152, 165, 6 L.Ed. 289, which case involved co-tenants of land. That case does not properly bear upon the facts here involved. There the court said:

"It is contended, that he is a tenant in common with others, and ought not to be permitted to sue in equity, without making his co-tenants parties to the suit. This objection does not affect the jurisdiction, but addresses itself to the policy of the court. Courts of equity require, that all the parties concerned in interest shall be brought before them, that the matter in controversy may be finally settled. This equitable rule, however, is framed by the court itself, and is subject to its discretion. * * * In this case, the persons who are alleged to be tenants in common with the plaintiffs, appear to be entitled to a fourth part, not of the whole tract, but of a specially described portion of it, which may, or may not, interfere with the part occupied by the defendants. Neither the bill nor the answer allege such an interference, and the court ought not, without such allegation, to presume it."

Plaintiffs also cite and quote from two cases, upon which they place particular stress, to support their contention, that the claims of the several beneficial owners are separable. In their brief (p. 40) they say:

"Lest there be any doubt in the mind of the Court, we now desire to refer the Court to two cases, in which not only the facts involved, but the relief sought is almost completely parallel to the case at bar. We refer to Union Mill & Mining Co. v. Dangberg, C.C., 81 F. 73, 78, and Rose v. Saunders, 9 Cir., 69 F.2d 339."

The case of Union Mill & Mining Co. v. Dangberg, supra, was decided by the Circuit (now District) Court of Nevada, on May 24, 1897. This was a suit over water-rights for irrigation. On page 87 of 81 F., the court said:

"It is contended that complainant ought not to be permitted to maintain this suit without making its co-tenants parties thereto. This contention cannot be sustained. It does not affect the jurisdiction of the court, but addresses itself solely to the policy of the court. Elemendorf v. Taylor, 10 Wheat. 152, 166, [6 L.Ed. 289]. It is not shown either by the pleadings or the proofs herein that any injury will result to respondents by the failure of complainants to make its co-owners in the mills parties to this suit. Complainant's interest is several. There is but a unity of possession. Its estate is capable of being injured, and it is entitled to have it protected from irreparable injury, without regard to the action of its co-tenants. The co-tenant is not an indispensable party to the determination of its rights."

In the case of Rose v. Saunders, supra [69 F.2d 340], the court said:

"It has frequently been held that a co-tenant can maintain an action to quiet his title in the federal court without joining his cotenant and that the federal court has jurisdiction thereof if there is a diversity of citizenship notwithstanding the fact that if the tenant in common is joined as plaintiff there will be no such diversity of citizenship."

The court cannot agree with plaintiffs that these two cases are on all fours with the case at bar. In those actions they were brought by co-tenants whose interests were several, and whose interests and rights were ascertainable, and to protect which a decree could be entered without affecting the several rights of those not joined as parties plaintiff.

The position occupied by the parties plaintiff is (1) that of shareholders in a trust created by contract, and (2) they are parties to an executory contract between themselves and the other beneficial shareholders in the trust, and beween themselves with the other beneficial shareholders in the trust on the one hand and the trustees on the other. Clearly the legal basis for the 1937 declaration was one of contract, involving concomitant rights, duties, and obligations between all the parties to the contract, plus the duties and obligations of

the trustees in carrying out the contract, by administering the trust.

To disturb this relationship by the removal of the trustee would vitally affect the rights and interest of every beneficial shareholder, all of whom are parties to the executory contract. Therefore they have a right and interest in the continued existence and performance of the contract which they have made, by the parties with whom they made it, and of this right and this interest they cannot be deprived by a court of equity without their presence in the case, either actually or constructively. In this case the absent parties have a right in the performance by the defendant of his fiduciary obligations under the contract, as he, J. H. Crain, is the exact person to whom they have by this contract committed their interest and entrusted their rights, and to whom they have a right to look for the performance of the contract according to its terms. To set aside that contract, without the presence of the absent beneficial shareholders in the trust, who are parties to the contract, would be entering a decree vitally affecting the rights and interests of absent parties to the action.

█ Under such a state of facts all of the beneficial shareholders in this trust, and all of the parties to this executory contract, are indispensable parties to this action. They are not present actually or constructively, cannot be made parties without depriving the court of jurisdiction over the parties to the action, and this case must be dismissed for want of indispensable parties.

For her separate cause of action against the defendant Victoria Wilson Wesson alleges:

That on or about October 31, 1941, she borrowed from the trust approximately $152,000, for which she executed a demand note and as collateral security for the loan she put up certain stock and also certificates of beneficial interest in the trust, all of the value of $520,000, and that she now owes approximately $124,000 on said indebtedness. She alleges that the defendant trustee has, for several years, exhibited hostility toward her personally, that he has now called this demand note for payment, and has now demanded payment thereof,

with accrued interest thereon from January 1, 1946, and has threatened to foreclose on the collateral securing the said loan. She then alleges:

"This plaintiff further alleges that the other beneficiaries under the Trust are also indebted to the Trust, but that the defendant has not called any of those said debts, or demanded payment thereof. The defendant has exhibited his partiality and preferred treatment for certain other beneficiaries of the Trust, particularly by his action in demanding payment of the note of this said plaintiff."

She then alleges that the note is well secured by the collateral she has put up. The prayer of the complaint is:

"That the defendant J. H. Crain, be enjoined from taking any action toward calling or collecting the indebtedness of the plaintiff Mrs. Victoria Wilson Wesson described in this complaint, and from foreclosing or attempting to foreclose the lien on any properties heretofore pledged or given as security for the said debt, pending the outcome of this case."

█ This amounts to no more than this, that Mrs. Wesson is asking the court, as a court of equity, to write a new contract between the parties. This the court cannot do. Courts do not make contracts for the parties. They determine if there is a contract. If they find there is a contract, then they construe that contract, if its language is such as to need construing. But in the final analysis they only construe and enforce the contracts which the parties have made.

In United States v. Ames, 99 U.S. 35, 25 L.Ed. 295, the court said:

"Courts of equity may compel parties to execute their agreements, but they have no power to make agreements, or to alter those which have been understandingly made." See also Merchants' Loan & Trust Co. v. Chicago Railway, 7 Cir., 158 F. 923, where the court said: "The court does not make contracts for parties. It deals with legal rights, as the parties have, by contract, made them, and although it may believe that a party insisting upon those rights is probably, or even certainly, bound to suffer loss, yet while he insists, it must protect

him in that insistence. There is no wide discretion vested in the chancellor which permits him to disturb contract rights—rights of property."

■ The plaintiff Mrs. Wesson does not allege any fraud, or any violation of any legal right that she has or will suffer, nor does she even allege that it would cause her to suffer inconvenience. Her only allegation is that the Trustee is about to call upon her to comply with the contract she has understandingly made. "In respect to voluntary contracts inter vivos, it is a general principle that courts of equity will not interfere, but will leave the parties where the law finds them." Storey's Equity Jurisprudence, 14th Edition, Section 946. Her complaint, where she seeks an injunction to restrain and prevent the Trustee from enforcing collection of the demand note, does not state facts upon which the court can give relief. Therefore that cause of action must also be dismissed.

Counsel for defendant are requested to forthwith prepare proper orders for carrying into effect the court's findings, and submit them for entering.