### LAMPRECHT et al. v. CLEVELAND–ERIEAU S. S. CO.

### GUARDIAN SAVINGS & TRUST CO. v. CLEVELAND–ERIEAU S. S. CO. et al.

(District Court, N. D. Ohio, E. D.　March 29, 1922.)

Nos. 578, 611.

Admiralty ⊚⇒57—When general bond or stipulation given, claimants must look thereto and cannot arrest vessel.

　　Under Rev. St. § 941, as amended by Act March 3, 1899 (Comp. St. § 1567), permitting owner or claimant of vessel to give general bond or stipulation conditioned to answer decree in any or all cases thereafter brought, persons claiming liens thereafter must look to the bond or stipulation and cannot re-arrest or seize the vessel, at least so long as penalty of the bond is double the aggregate amount of all claims.

In Admiralty. Consolidated suits by J. I. Lamprecht and another against the Cleveland-Erieau Steamship Company, and by the Guardian Savings & Trust Company against the Cleveland-Erieau Steamship Company and another. On applications by the Niagara Laundry & Linen Supply Company and others for leave to file libels in rem in admiralty. Applications denied.

In No. 578:

Wallace I. Knight and White, Johnson, Cannon & Spieth, all of Cleveland, Ohio, for plaintiff.

Kelley & Cottrell, of Cleveland, Ohio, for Guardian Saving & Trust Co.

Stearns, Chamberlain & Royon, of Cleveland, Ohio, for defendant. In No. 611:

Kelley & Cottrell, of Cleveland, Ohio, for plaintiff.

Stearns, Chamberlain & Royon, of Cleveland, Ohio, for defendants.

WESTENHAVER, District Judge. Certain creditors, namely, the Niagara Laundry & Linen Supply Company, the Halle Bros. Company, the Goff-Kirby Coal Company, the Kinney & Levan Company, the Wm. Edwards Company, the Ward Baking Company, the Union Towel Sup-

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ply & Laundry Company, and the Standard Brewing Company, have filed in these causes, March 11 and 17, 1922, applications for leave to file and prosecute libels in rem in admiralty against the steamer Theodore Roosevelt. These creditors represent that their claims are for necessaries furnished this steamer before the appointment herein of R. P. Abbey, receiver, and claim a maritime lien for such necessaries. Their request is that they may be permitted now to file libels in admiralty against said steamer, seize and arrest her, and subject her to sale to pay these maritime liens, and that the order made herein September 24, 1920, when said receiver was appointed, enjoining all persons from bringing actions or interfering with the receiver's possession, shall be modified so as to permit them so to do. Objection is made to the granting of such permission.

A brief statement of the proceedings in these several causes is necessary to a clear understanding of the questions now presented for decision. The bill in No. 578 is in the nature of a general creditors' bill seeking the preservation and equitable administration and distribution among creditors and stockholders of the assets of the defendant the Cleveland-Erieau Steamship Company, of which assets the steamer Theodore Roosevelt was the only substantial item. An order was made September 24, 1920, appointing R. P. Abbey receiver for all these assets, and thereupon said receiver took possession of said vessel and has now, and has ever since his appointment had, possession of her continuously except during a brief period in the summer of 1921. This court has from time to time authorized him to incur expense in the protection and preservation of said vessel and to borrow money and issue receiver's certificates therefor, and has imposed the obligation thereof as a first lien prior to all other liens upon said vessel. Among the payments so made from funds thus derived were the wages of the crew employed at the time the receiver was appointed, such payment being necessary to prevent accumulation of the statutory penalty for nonpayment on discharge; also, insurance, wages of watchmen, and other expenses incident to laying up, berthing, and protecting said vessel. No question is or can be made that all expenditures thus made and expenses incurred were necessary for proper protection and preservation.

On December 3, 1920, a further order was made, appointing a special master to ascertain and report a list of all the creditors, the amount and nature of their respective claims, and the priorities thereof. Notice by publication was given to all persons to present and file claims on or before a fixed date. A warning order in the usual form was also published. The petitioners herein are among the creditors who presented and filed claims pursuant to such notice, either with the receiver or with the special master.

The bill in cause No. 611 was filed February 19, 1921, by the Guardian Savings & Trust Company as trustee, to secure an issue of negotiable coupon bonds. This trustee on January 30, 1921, applied for such leave and an order was made granting it. The mortgage was executed by the defendant company on or about July 1, 1920, and conveyed the steamer Theodore Roosevelt as security for the same. The

amount of this mortgage indebtedness is the sum of $150,000, of which part was at this time due and payable and the remainder had been declared due and payable, as was permitted by the terms of the mortgage, because of default in the payment of certain installments of bonds and interest. No decrees were made in this cause prior to January, 1922, when it was consolidated with cause No. 578.

On March 5, 1921, the Pittsburgh Steamship Company and others applied to the court in cause No. 578 for leave to file libels in admiralty against the steamer Theodore Roosevelt and to prosecute such libels to judgment and sale notwithstanding the appointment of the receiver and the restraining order of September 24, 1920. Leave was granted, and the receiver was directed to accept service in rem and to enter the appearance thereto of the steamer. This libel, being No. 2736 in admiralty, was duly filed, and from time to time thereafter other creditors claiming like maritime liens were given leave to intervene in said admiralty cause and like orders were made directing the receiver to accept service in rem and enter the appearance of the steamer. Permission was also given to the marshal to seize and arrest said steamer in said admiralty proceedings and a warrant was duly issued and such seizure was duly made.

In cause No. 578, by decree entered May 5, 1921, the receiver was authorized to execute a contract of charter for said steamer with the Roosevelt Steamship Company for the summer navigation season of the year 1921. This charter was duly executed. Its terms are immaterial. At the expiration of this charter, the steamer was returned to the physical possession of the receiver free and clear of all liens, claims, and demands accruing during the operation under said charter.

In order that said charter party might be made and to discharge the Theodore Roosevelt from the libels and attachments that had theretofore been issued and levied on her in admiralty or that might thereafter be issued and levied on any maritime liens then or previously existing, a bond was duly executed and filed in admiralty cause No. 2736. This bond was in the penalty of $130,000. It was duly approved both as to form and sufficiency of the sureties by this court, and filed in said admiralty cause June 6, 1921. It purports to be made not merely to secure and pay all libels and attachments which had been, but such also as might from time to time thereafter be, instituted upon claims antedating the making of said charter. An order was made June 6, 1921, in said admiralty cause directing the marshal to release said steamer and to forthwith deliver her to the Roosevelt Steamship Company. This was accordingly done.

On January 25, 1922, admiralty cause No. 2736 was finally heard and a final judgment therein was entered. This judgment recites the giving of the bond above referred to, the conditions thereof, and due publication of monition in said cause. It finds the amounts and priorities as between themselves of all maritime lienors who had filed libels, aggregating the sum of $53,052.21, and ordered the payment thereof to be made by the Cleveland-Erieau Steamship Company as principal and by the sureties on its bond within 10 days from the entry thereof.

Payment was duly made by I. T. Kahn and William H. Lamprecht, two of the sureties on said bond.

Later, causes No. 578 and 611 were consolidated. The special master originally appointed to ascertain and report all claims and demands having become disqualified without fully executing such order of reference, these causes were referred to another special master with instructions to determine the amount, rank, and priority of all the liens and claims herein filed and to be filed, excepting only the amounts of claims of unsecured creditors of said steamer or of the Cleveland-Erieau Steamship Company. The reason for excepting unsecured claims was that it had become apparent that the vessel would not sell for enough to pay liens. This order of reference was duly executed by the master; and on March 11, 1922, a decree was entered in the consolidated causes confirming said report, establishing the liens, and directing the sale of the vessel to be made to pay the same. The order of liens as established is: First, costs and expenses of the receiver; second, receivership certificates heretofore issued; third, certain fees of counsel for the receiver; fourth, the amount of the maritime liens paid by Kahn and Lamprecht, sureties on the release bond above referred to; and, fifth, the mortgage indebtedness to bondholders for which the Guardian Savings & Trust Company was trustee. An order of sale has been issued and advertisement made pursuant to this decree.

Thus it appears that on September 24, 1920, this court obtained full jurisdiction to administer in equity all the property and assets of the Cleveland-Erieau Steamship Company, including the steamer Theodore Roosevelt; that its receiver duly appointed herein has seized said steamer and brought her physically within the custody of this court; that this court in the preservation and protection of said steamer has incurred expense and expended money for which receivership certificates were issued and made a first lien prior to all other liens except costs and expenses, upon the corpus of said steamer; that this court in the course of such administration has not permitted any liens, maritime or otherwise, other than such certificates, costs, and expenses, to be created or imposed upon the estate; that this court has been scrupulous at all times to preserve and protect its jurisdiction over said steamer as against the claims and demands of all persons whatsoever. It further appears that this court, for convenience and out of consideration for the rights of persons claiming pre-existing maritime liens, did not require the holders thereof to come into this cause and assert the same, but, on request, gave them leave to file libels in rem and directed its receiver to appear thereto and enter the appearance of the steamer; and also, in order that no question might be raised respecting the jurisdiction in admiralty, an order was made permitting said steamer to be seized by the marshal and monition to be duly published so as to bring in all persons claiming maritime liens thereon; and also that it later required to be given and approved a good and sufficient bond to release said steamer from all pre-existing maritime liens so that its receiver might enter into what was regarded as a hopeful charter for the operation of said steamer during the summer of 1921.

The application of the several petitioners now is that this court should permit additional libels in admiralty to be filed and said steamer to be arrested. This request is made notwithstanding the final hearing and judgment in the admiralty cause and notwithstanding the debts and liens have been ascertained and marshaled and priorities determined in the consolidated causes in equity and a decree of sale based thereon has been entered. This request is the equivalent of asking this court to renounce its jurisdiction. The release thus sought is opposed. In opposition it is mainly urged that the vessel having been discharged from custody by a general bond or stipulation for the benefit of all pre-existing maritime lienors, whether libels had been filed or not, this discharge is final and no maritime claimant has now a right to file a new libel in rem against said vessel or to seize or re-arrest her. In addition thereto, it is urged that the jurisdiction of this court has become final and conclusive; that it could and might give relief in these causes to all maritime lienors; and that when the several petitioners filed their claims as creditors and remained silent until the decree of sale has been made, it is now too late to assert these claims as maritime liens either in this cause or elsewhere. The argument in support of the first proposition is based on the amendment of March 3, 1899, section 941, Rev. St. U. S. (Comp. St. § 1567). This section, prior to the amendment, permitted the claimant of a vessel to give a bond or stipulation in double the amount claimed by the libel, with sufficient surety to be approved by the judge of the court where the cause is pending, conditioned to answer the decree of the court in such cause, and when a bond was thus given and approved, the marshal was directed to discharge the vessel which he had arrested or seized in a proceeding in admiralty in rem. Thus far the section seems to have been declaratory only of the settled law and practice in admiralty. The amendment permits the owner or claimant of any vessel to execute and deliver a general bond or stipulation with sufficient surety to be approved by the judge, conditioned to answer the decree in all or any cases that should thereafter be brought in said court against said vessel. When this is done, it is provided that all process against such vessel shall be stayed so long as the amount secured by such general bond or stipulation shall be at least double the aggregate amount claimed by all libelants. It is further provided that like judgments and remedies may be had on this kind of bond or stipulation as if a special bond or stipulation had been filed in each of said suits. Power is likewise conferred on the court to require additional security from time to time.

Counsel stated in argument that they are unable to find any adjudged cases as to the effect of a general bond or stipulation. Counsel opposing the application cite and rely on cases arising under a special bond or stipulation. The law as settled by those cases is that when a vessel has been fairly released from seizure on a valid stipulation or bond, it returns to the claimant or owner forever discharged from the lien which was the foundation of the proceedings in which it was arrested. The court has not power thereafter to order the vessel back into custody, even by consent of parties, except perhaps where the original re-

lease has been obtained through fraud or mistake. The remedy thereafter of the libelant is against the special bond and the sureties thereon, and this remains true even though subsequently to the approval of the bond the principals and sureties therein may have become insolvent. 1 Cor. Jur. 1306; United States v. Ames, 99 U. S. 35, 25 L. Ed. 295. This being the admitted law as to a special bond or stipulation in a particular cause, it seems to me that counsel's contention is sound that the same rule must by analogy be applied to a general bond or stipulation. Congress must be presumed to have enacted the amendment of March 3, 1899, with these rules of law in mind. Clearly therefore it would seem that Congress intended to apply to a general bond or stipulation the rules relating to a discharge which had previously been applied when the discharge was under a special bond or stipulation. If, after a vessel has been discharged on a special bond or stipulation, it cannot again be seized or arrested, but that the libelant must look exclusively to the bond, then it seems equally true that when a general bond or stipulation is given, all claimants must look to that bond for payment and that the steamer cannot again be re-arrested or seized. This is certainly true so long as the penalty of the bond shall be double the aggregate amount claimed by all libelants and until an order for additional security has been made and the bond not given.

Here the bond is in double the amount of all maritime claims. No question is made that the bond as given and approved is not in proper form or that the order releasing the steamer and approving the bond was obtained through mistake or by fraud. The maritime liens now claimed by the petitioners were discharged along with the maritime liens on which libels had been filed and the steamer seized. The remedies of both sets of maritime claimants are thereafter against the principal and sureties therein and not against the vessel. It results that whatever rights or remedies, if any, petitioners have or may now assert upon this general bond, they do not have maritime liens upon the vessel nor any right to seize or re-arrest her. This being so, the decree of sale heretofore made in this cause should not be interfered with. No good reason is perceived why the purchaser at such sale will not take a good title to said vessel free and clear of any and all maritime liens existing at or prior to the appointment of the receiver herein. If this were not the law, then indeed the law is deserving of Dogberry's characterization of it.

In support of the second proposition it is urged that a court of equity having taken jurisdiction of a vessel in a general creditors' suit, and having appointed a receiver therein who has taken this vessel into custody, has full jurisdiction to administer the assets and to grant complete relief to all parties by requiring maritime lienors to come in and assert their liens and may sell the vessel and pass a good title free and clear of all maritime liens which stay out; that this power of a court of equity is full and complete respecting maritime liens as is the power of a court of admiralty in exercising its jurisdiction to give equitable or legal relief by protecting and preserving common-law

liens. It is further urged that expressions in Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981, relied upon as to the contrary, are pure dicta and have no greater force and are not to be given greater weight than conflicting expressions to the contrary in Pratt v. Paris Gas Light & Coke Co., 168 U. S. 255, 259, 18 Sup. Ct. 62, 42 L. Ed. 458; that the question involved, and the only one decided in Moran v. Sturges, was whether or not a state court might enjoin the prosecution of an action in admiralty when it appeared only that the state court had appointed the receiver who did not attempt to take possession until after the marshal had seized the vessel in a proceeding in admiralty; and that, inasmuch as it is settled law that priority of jurisdiction depends, not upon the date of an order of appointment, but upon the date of taking possession, Moran v. Sturges is not an authority for any other proposition. In support of the proposition that a United States court, sitting in equity or in bankruptcy, obtains jurisdiction to administer full relief and convey a good title and impose the necessary expenses of the receivership upon the corpus of the vessel prior to pre-existing maritime liens, are cited the following authorities: Taylor v. Carryl, 20 How. 583. 15 L. Ed. 1028; Pratt v. Paris Gas Light & Coke Co., 168 U. S. 255, 259, 18 Sup. Ct. 62. 42 L. Ed. 458; In re People's Mail Steamship Co., Fed. Cas. No. 10970; In re Hughes (D. C.) 170 Fed. 809; The Falcon (3 C. C. A.) 177 Fed. 916, 101 C. C. A. 196; The Jonas H. French (D. C.) 119 Fed. 462; The Casco (D. C.) 230 Fed. 929. These authorities support these propositions, but there are respectable dicta to the contrary. No opinion is expressed by us on this point because it is unnecessary so to do in view of our conclusion upon the first proposition.

Nor is any opinion expressed touching the rights of the petitioners upon the general bond or stipulation. Whether any right is lost because of the proceedings in this cause or of the final hearing and judgment in the admiralty cause cannot well be decided upon the present application. The petitioners' request for leave to libel, seize, or re-arrest the vessel and to modify the restraining order will be denied. No order will be made prohibiting them from proceeding in any manner by them deemed appropriate to assert a demand upon said bond so long as they do not seek to interfere with the receiver's possession of said vessel or the right of this court to sell and convey a good title thereto.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes