## THE THEODORE ROOSEVELT.

(District Court, N. D. Ohio, E. D. May 2, 1923.)

No. 2809.

1. **Admiralty 57—Rendition of one judgment on bond given to protect against arrest does not exhaust liability.**

Under Rev. St. § 941, as amended by Act March 3. 1899 (Comp. St. § 1567), authorizing owner of vessel to give bond or stipulation to answer decree in all cases thereafter brought against the vessel, and providing that thereupon execution of process shall be stayed, recovery of single judgment, even on monition duly published, does not exhaust liability on the bond, and the unexhausted portion thereof remains liable to holders of other maritime liens within terms of the bond.

2. **Judgment 644—Maritime claimant submitting claim to court of equity cannot thereafter seek relief in admiralty.**

When maritime claimant submits controversy to court of equity, and such court hears and decides it, he is thereafter barred from seeking relief in admiralty.

3. **Judgment** ☞634—**Only conclusive when parties and causes of action are the same and judgment is final and on the merits.**

It is essential to operation of judgment as estoppel as to grounds of recovery or defense which might have been presented, that parties and causes of action should be the same, and that final judgment on the merits should have been rendered.

4. **Judgment** ☞714(1)—**Estoppel only as to point in issue and decided, when cause of action not the same.**

When causes of action are not the same, prior judgment, even if final and on the merits, is an estoppel only as to the exact point in issue and decided.

5. **Judgment** ☞956(1)—**Burden on party claiming estoppel to show point was in issue and decided.**

Where cause of action is not the same, burden is on party relying on former judgment as estoppel to show that exact point was put in issue and decided.

6. **Judgment** ☞714(2)—**Cause of action on maritime lien held not the same as that on claim as unsecured claim.**

As respects estoppel by judgment, causes of action in admiralty on maritime liens *held* not the same as that presented by filing of claims as unsecured claims against vessel owner in consolidated suits in equity to administer its assets and foreclose mortgage.

7. **Maritime liens** ☞1—**Lien is proprietary interest or right in vessel.**

Maritime lien is proprietary interest or right in vessel itself, and not cause of action or demand for personal judgment against owner.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Maritime Lien.]

8. **Judgment** ☞731—**Decree in equity suit held not to have adjudicated right to maritime lien.**

Where claims of persons afterwards asserting maritime liens were filed as unsecured claims in suit in equity against the vessel owner to administer its assets, but no action was taken thereon, and thereafter case was referred to special master to determine amount, rank, and priority of certain preferred claims, by decree which recited that it was not necessary to inquire into unsecured claims, there was no adjudication that libelants did not have maritime liens, so as to bar subsequent suits in admiralty.

9. **Maritime liens** ☞61—**Suits on bond given to prevent arrest or seizure held not barred by laches.**

Libels in admiralty on bond given under Rev. St. § 941, as amended by Act March 3, 1899 (Comp. St. § 1567), to prevent subsequent arrest or seizure of vessel, *held* not barred under admiralty doctrine of laches or staleness, where no loss of evidence had resulted, and no greater liability would be imposed on sureties than was voluntarily assumed by them when they became bound.

In Admiralty. Libel by the Niagara Laundry & Linen Supply Company against the steamer Theodore Roosevelt, her engines, boilers, etc., claimed by the Cleveland-Erieau Steamship Company, in which other parties filed intervening libels. Judgment for libelant.

Holding, Masten Duncan & Leckie, of Cleveland, Ohio, for intervening libelants Boom Boiler & Welding Works and others.

R. A. Lang, of Cleveland, Ohio, for intervening libelant Kinney & Levan Co.

Stearns, Chamberlain & Royon, of Cleveland, Ohio, for intervening libelant Ward Baking Co.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John A. Cline, of Cleveland, Ohio, for intervening libelant Standard Brewing Co.

George B. Marty, of Cleveland, Ohio, for intervening libelant Union Towel Supply & Linen Co.

White, Cannon & Spieth, of Cleveland, Ohio, for defendant Cleveland-Erieau S. S. Co.

WESTENHAVER, District Judge. This libel, filed April 2, 1922, seeks to establish liability on a general bond given to release the steamer Theodore Roosevelt from seizure and arrest because of certain maritime liens created prior to May 5, 1921. Other claimants of maritime liens have appeared and filed intervening libels. Answer was filed by I. T. Kahn and W. H. Lamprecht, 2d, sureties on said bond.

At the hearing, proof was offered to show that libelant's demand was in fact a maritime lien against the steamer; that is, was for supplies and other necessaries furnished and delivered to said steamer on the order of the owner or its agents, and prior to May 5, 1921, thereby bringing the demand within the terms of the bond. The right was reserved to the other intervening libelants to make similar proof, if it became necessary so to do and was required by respondents. The answer pleads affirmatively certain proceedings in consolidated equity causes Nos. 578 and 611, pending in this court, whereby liens and debts against said steamer and its owner The Cleveland-Erieau Steamship Company were ascertained and marshaled, and priorities determined, and said steamer was sold and the proceeds distributed. These proceedings, except as to their legal effect, are pleaded with substantial accuracy, but inasmuch as by admiralty rule 48 (267 Fed. xviii) no reply is required, and all new matters alleged in an answer are considered as denied, the proceedings in said cause, so far as relevant and material, are regarded in evidence and will be considered.

The prior proceedings out of which this controversy arises were so fully stated and reviewed by me in opinion filed March 29, 1922 (291 Fed. 876) in equity causes Nos. 578 and 611, that they need not be again restated. Three disputed propositions of mixed law and fact are now involved and will be considered, namely: (1) Whether or not the sureties on the bond are exonerated from further liability as a result of a former judgment thereon in admiralty, rendered after monition duly published, establishing maritime liens and ordering payment by the sureties; (2) whether or not the present libelants are estopped on the principles of res judicata from now asserting maritime liens by the proceedings in said equity causes; (3) whether or not the admiralty doctrine of laches or staleness bars the libelants at this late day from asserting maritime liens against said steamer for which the sureties on said bond may be held liable.

[1] 1. While said causes in equity Nos. 578 and 611 were pending, and after B. C. Miller had been appointed a special master to ascertain and report a list of all debts, secured and unsecured, and the priorities thereof, the Pittsburgh Steamship Company applied to the court for leave to file libels in admiralty against the steamer Theodore Roosevelt and to prosecute the same to judgment and order of sale, notwithstand-

ing the appointment of the receiver and a restraining order previously made. This leave was granted, and like leaves were also granted to a number of other maritime claimants. This admiralty cause, entitled Pittsburgh Steamship Co. v. Steamer Theodore Roosevelt, is No. 2736 (no opinion filed), and was pending and undecided when the release bond now in question was given. The steamer was duly seized on process duly issued thereon, and the appearance of the steamer was entered in rem by the receiver. Later, after the bond was given, monition was duly published. On January 25, 1922, admiralty cause No. 2736, together with all other intervening libels, was heard, the amounts and priorities as between themselves of all maritime liens were determined, and judgment rendered for the amount thereof, aggregating $53,052.21, against the principal and sureties on the bond. This aggregate amount was later paid by the respondents, Kahn and Lamprecht. Their contention, briefly stated, now is that this judgment exhausted their liability on the bond, and that they cannot now be held for other maritime liens, even though existing prior to the giving of the bond, and otherwise within its terms.

The bond itself is in the penalty of $130,000. It recites that libels and attachments "have been and from time to time may be filed * * * against said steamer Theodore Roosevelt upon claims antedating" the making of a certain charter, the date of which is May 5, 1921. It further recites that it is desired "to avoid the seizure of said steamer Theodore Roosevelt and the delay of the same, and at the same time to secure the parties libelant, establishing such maritime liens." The condition of the bond binds the obligors to "abide by and fully perform the decree of the United States District Court for the Northern District of Ohio in any and every such proceeding or proceedings and pay all such judgments, expenses, and costs as shall be awarded therein." Thus it appears that, in order to procure the release of the steamer from such libels as had already been filed and to protect her against future arrest or seizure, the obligors expressly bound themselves not merely to pay such judgments as might be rendered in pending libels, but such as might be rendered in libels that might thereafter be filed, provided only that they were judgments rendered by the United States District Court of a certain district and upon maritime claims or demands arising prior to May 5, 1921, the date of making a certain charter. The present libels are all within the terms of the bond, and the sureties must respond thereto, unless the contention is sound that, pursuant to the principles of maritime law and the statute under which said bond was given, liability thereon is exhausted when a final judgment after monition duly published is rendered in an admiralty cause on said bond.

This bond is given under favor of R. S. § 941, as amended March 3, 1899 (U. S. Comp. Stat. § 1567). The 1899 amendment is the last full sentence of the section. Respondents contend, as I understand their contention, that the amendment, notwithstanding its broad language, does not contemplate an indefinite continuing liability, but, properly construed, restricts the liability to one final judgment in an admiralty suit rendered after monition duly published, requiring all

claimants to appear and present their maritime liens. In support of this contention, reasons of convenience largely are invoked. It is said that a libel in rem after seizure is notice to all the world; that after monition is published the court may hear the cause and ascertain all maritime liens; and that thereafter an order of sale bars all who have failed to come forward and intervene. This may be conceded. It is further said that if a surplus is left in the registry of the court after payment of the maritime liens thus established, this surplus may, on application of the owner, be paid to him free and discharged of any maritime lien, and that the claimants thereafter must rely on the personal responsibility of the debtor. This also may be conceded. But, on the other hand, if there is a surplus left after judgment and sale, any maritime claimant may, before payment to the owner, notwithstanding the proceedings referred to have been had, assert his maritime lien against this surplus. This is not denied. The libelants contend that the unexhausted part of the bond stands in the same relation to pre-existing maritime liens as does the undistributed surplus from the proceeds of the sale in the registry of the court.

As already said, the bond itself contains no terms limiting the liability of the surety in the manner contended by respondents. Is there in section 941 anything which justifies or requires this limitation? Counsel say that this question does not appear ever to have been considered by the courts. Respondents' counsel say that they have conferred by letter with the clerks of all the District Courts on the Great Lakes and the Atlantic and Pacific seaboard, and have been unable to learn that this precise question has ever arisen or been decided.

Certain principles of law are not in dispute. A bond or stipulation for value, given in a pending cause to obtain the release of a vessel, will be exhausted by a final judgment in that cause. This result would follow, even if the bond or stipulation for value was general in its terms. It is also settled law that the giving of a bond or stipulation for value forever discharged the vessel as against the claimants in favor of which the bond or stipulation was given, and that such claimants must thereafter look exclusively to the bond. See United States v. Ames, 99 U. S. 35, 25 L. Ed. 295; The Hattie Bell (D. C.) 65 Fed. 119. It does not follow, however, that a bond containing the conditions of the bond in question, and given to secure immunity from future arrest and seizure under favor of the amendment of March 3, 1899, is thus exhausted or exonerated. In my opinion, it is not.

This amendment provides for the giving of a bond, not in a pending libel, but before any libel is filed, and to prevent the arrest or seizure in the event future libels should be filed. It contemplates the giving of such a bond and the obtaining of this immunity in the future, even before maritime liens have been created. It is not, I am told, an unusual practice on the Great Lakes with vessel owners at the beginning of a season to file in every district where the vessels may ply a general bond under favor of this section, so as to cover liability for maritime liens during the navigation season, and thereby secure immunity from arrest and avoid the consequent delay during mid-season. When this is done, and so long as the penalty of the bond is double the aggregate

amount claimed by all libelants, the vessel is by statute made immune from seizure and arrest. The practice in lieu of seizure and arrest is to indorse the bond with a minute or note of all suits wherein process is stayed as a result of the giving of the bond. This is in accordance with the provisions of the statute. The amendment specially provides that like judgments and remedies may be had on said bond or stipulation as if a special bond or stipulation had been filed in each of said suits. The plain purport of the amendment is to substitute a general bond or stipulation for the vessel itself, and to give each and all maritime claimants separately the same rights against the bond or stipulation as each claimant would have separately against the vessel.

It results from this reasoning that, when the bond in question was given, all maritime liens antedating the making of the charter were transferred from the steamer to the bond, and that all of such claimants thereby acquired equal rights under the bond, and that these rights are not divested nor the bond exhausted by any one judgment thereafter rendered, even upon monition duly published. The unexhausted portion of the bond remains liable thereafter just as the proceeds from the sale of the vessel remaining in the registry of the court would remain liable. The bond would be discharged only under such circumstances of laches or staleness as would discharge the vessel itself if the bond had never been given.

[2] 2. Respondents further contend that the District Court, sitting as a court of equity, had jurisdiction in consolidated equity causes 578 and 611 to ascertain and determine all claims and liens against the steamer, including the maritime liens now asserted by libelants, and that it appears from the proceedings in said causes that this was done and libelants found not to have maritime liens, and hence are barred on the principles of res judicata. Libelants concede that if they had in fact appeared in said causes and had asserted or attempted to assert therein their maritime liens, they would have thereby submitted themselves to the jurisdiction of the court, and that the court would have had power to decide against them, and that they would be barred. Their contention is that they did not so appear and submit their maritime liens to the jurisdiction of a court of equity, and that the court did not in said causes decide against them. This concession, and the view taken by me of the proceedings in said cause, renders it unnecessary to decide whether a court of equity having, on a creditor's bill, appointed a receiver and taken possession of a vessel, has jurisdiction to compel an unwilling maritime claimant to appear therein and assert his maritime lien rather than in a court of admiralty and bar his lien in the event of his failure so to do. Whether a court of equity has this power is disputed, but no doubt exists under the authorities that, if a maritime claimant appears and submits his controversy to a court of equity, and that court hears and decides it, he is thereafter barred from seeking relief in admiralty. See Pratt v. Paris Gaslight & Coke Co., 168 U. S. 259, 18 Sup. Ct. 62, 42 L. Ed. 458; McRae v. Bowers (C. C.) 86 Fed. 344, 346; Cronenwett v. Boston & A. Transportation Co. (C. C.) 95 Fed. 52, 53; In re New England Transportation Co. (D. C.) 220 Fed. 203, 207; Appeal of James Rees & Sons Co., 237 Fed. 555,

150 C. C. A. 437. This is in effect conceded in Moran v. Sturges, 154 U. S. 257, at pages 277, 285, 14 Sup. Ct. 1019, 38 L. Ed. 981. The difficulty here is that the court in equity causes Nos. 578 and 611 did not, in my opinion, do that which respondents claim was done.

[3-5] Respondents invoke the general rule that a judgment, whether at law or in equity, operates as an estoppel, not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented. In support is cited Root v. Woolworth, 150 U. S. 401, 413-414, 14 Sup. Ct. 136, 37 L. Ed. 1123; Dowell v. Applegate, 152 U. S. 327, 341-346, 14 Sup. Ct. 611, 38 L. Ed. 463. This general rule is, however, subject to limitations. It is essential to its application that not only should the parties to the two different actions be the same, but that the cause of action should be the same, and that a final judgment upon the merits should have been rendered in the prior action. If the causes of action are not the same, then the prior judgment, even if final and on the merits, is an estoppel only as to the exact point in issue and decided. See Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 195; Russell v. Place, 94 U. S. 606, 24 L. Ed. 214; Bissell v. Spring Valley Township, 124 U. S. 225, 231, 8 Sup. Ct. 495, 31 L. Ed. 411. Thus, in the Cromwell Case, it was held that a second suit between the same parties upon different coupons clipped from the same bonds was not the same as a former action on other coupons, and that the prior judgment in the earlier action was not an estoppel as to every ground which might have been presented, but only as to the actual point litigated and decided. If the judgment is rendered on demurrer, and not upon final hearing and after trial, the same rule obtains; that is, the former judgment, even if between the same parties and on the same cause of action, is an estoppel only as to the exact point presented and decided on the demurrer. Wiggins Ferry Co. v. O. & M. Ry. Co., 142 U. S. 396, 410, 12 Sup. Ct. 188, 35 L. Ed. 1055. Likewise, since the former judgment must have been final and on the merits, it is held that a decision on a motion or a summary application is not to be regarded in the light of res judicata, or so far conclusive upon the parties as to prevent their drawing the same matters in question in a more regular form of action. See Denny v. Bennett, 128 U. S. 489, 491, 9 Sup. Ct. 134, 32 L. Ed. 491. Moreover, if the cause of action is not the same, or if the decision is on a demurrer, the burden is on the party relying on the estoppel to show that the exact point was put in issue and decided; otherwise, the estoppel is not established. See Russell v. Place, supra.

Applying these principles, I am of opinion that the cause of action was not the same, and that the question now presented was not litigated or decided in the equity causes. This will appear from a brief reference to the outstanding facts. Cause No. 578 was a creditors' bill for the administration of the assets of the Cleveland-Erieau Steamship Company, of which the steamer Theodore Roosevelt was the chief, if not the only, asset. Equity cause No. 611 was a foreclosure bill, filed after consent duly given, seeking foreclosure of a mortgage on said steamer. On December 3, 1920, an order was made in cause No. 578 appointing B. C. Miller a special master, with instructions to as-

certain and report a list of all creditors, secured and unsecured, together with a statement showing the nature and amount of their respective claims and priorities. The receiver was ordered to furnish the master a list of all creditors, secured and unsecured, appearing upon the company's books, so that the master might, as he was directed, give them written notice by mail of the order of reference. This requirement was complied with, and notices were duly mailed. Notice of the reference was also given by publication. The special master's record shows that the claims of the libelant, the Niagara Laundry & Linen Supply Company, and of the intervening libelant, the Ward Baking Company, were filed by the receiver, and that all the claims of the present libelants were filed in the form of itemized accounts verified by affidavit, and in which all of them stated they had no security for their respective claims, except the Kinney & Levan Company, which said it had no security "except the claim of a maritime lien to secure said account, and priority accordingly." No issues as to any of these claims were framed before the special master. No testimony with respect to them was taken before him. No hearing was had upon the merits as to any of them. Nothing was decided by him. All proceedings were permitted to pend in this situation during the year 1921, owing to the hope and expectation that, either through a process of reorganization or by means of the charter referred to, a reorganization could be effected which would provide for all debts and liens and prevent a sale of the steamer.

After the close of navigation in 1921, it became apparent that these results could not be avoided and that the steamer must be sold. B. C. Miller, being the clerk of the court, had become disqualified by act of Congress from serving further as a special master. On February 10, 1922, the two equity causes were consolidated, and another decree of reference was entered, appointing Hon. C. D. Friebolin special master. His instructions, among others, required him to hear and determine such claims against the steamer Theodore Roosevelt and the Cleveland-Erieau Steamship Company as may be presented to him or as the court by further order might direct; to determine the rights, amount, rank, and priority of all liens and claims heretofore filed or to be filed, in particular the rights and priorities of court costs, receiver's expenses, receiver's certificates, the mortgage and bonds upon the steamer Theodore Roosevelt, the claims in the hands of Kahn and Lamprecht by reason of their having paid off maritime liens, and certain other matters not now material. The decree further provided:

"But it will not be necessary at this time to examine or inquire into the amounts of claims of unsecured creditors of such steamer or the Cleveland-Erieau Steamship Company."

The master's report shows that he heard and determined nothing except matters pertaining to court costs, receiver's expenses, receiver's certificates, the mortgage bonds, claims paid by Kahn and Lamprecht on maritime liens, expenses and fees of trustee for bondholders, and insurance premiums. No other matters were presented to him, considered, or decided by him. No finding was made by him with respect to the claims of creditors previously filed with the former special mas-

ter. His report was confirmed and sale ordered, and the steamer was bought by the respondents.

[6, 7] The present cause of action asserted by the libelants cannot, it seems to me, be said to be the same as that of the unsecured claims filed by them with the receiver or with the first special master. Their statements of account, verified by affidavit, were not the assertion of a libel in rem against the steamer or the legal equivalent of a libel claiming a maritime lien on the steamer. Granting that the claims thus filed grew out of a cause of action maritime in its nature, nevertheless the cause of action presented to the special master was in the nature of an action in personam against the Cleveland-Erieau Steamship Company, and not a libel in rem against the steamer Theodore Roosevelt. This, in my opinion, is a different cause of action from a libel in rem. The maritime lien is a proprietary interest or right in the steamer itself, and not a cause of action or demand for a personal judgment against its owner. See The Samuel Little (2 C. C. A.) 221 Fed. 308, 316, 137 C. C. A. 136. This being so, the judgment or decrees in the equity causes, in order to operate as an estoppel, must affirmatively appear to have determined the exact point now in issue.

[8] Nor can it be said that the court in the equity causes held or determined, directly or indirectly, that the libelants did not have a maritime lien. Their claims were filed in personam, and, with the exception of the Kinney & Levan Company, none intimated that he claimed any other right than that of a creditor seeking a personal judgment against his debtor.

The second decree of reference does not determine, and it was not in fact determined by the court, that the unsecured creditors did not also have maritime liens which might be asserted in admiralty. On the contrary, the court expressly refrained from examining or inquiring into the subject. The language of the decree is that it is not necessary to examine or inquire at this time into the amounts of such claims. If it was not necessary to inquire into the amounts of claims, and no such inquiry was made, it equally follows that no inquiry was made as to whether a maritime lien might grow out of the claims. The master was not directed by the court, nor called on by any one to inquire on that subject, but was directed by the court to limit, and did in fact limit, his inquiry to other matters. It may be that some one was of the opinion that these unsecured creditors neither had nor intended to assert a maritime lien on the vessel, but this is an entirely different matter from an adjudication that they did not have such a lien nor a right to assert it, and their rights, if any, are not barred by a sale and distribution without regard to their rights.

Consequently it must be held that it is not made to appear that the question now presented was submitted to or decided by the court in the equity causes, but that the contrary is the case. The applicable rule of law is not that invoked by respondents, but that of the exceptions thereto above noted.

[9] 3. Respondents have not stressed the admiralty doctrine of laches or staleness as a defense, and little therefore need be said on that subject. It would seem that this doctrine will apply to suits to enforce

liability on a general release bond such as here involved, as well as to protect the vessel itself. No other ground, however, is perceived, except the statute of limitations, whereby the sureties may be exonerated and protected. If there existed such special or usual circumstances justifying the application of this doctrine, it ought to be applied, but all the special circumstances are the other way and forbid the application of the doctrine. No greater liability is imposed upon the sureties than was voluntarily assumed by them when they became bound. No loss of evidence from the delay has resulted or is asserted. If the question involved was the right of libelants to follow the steamer into the hands of an innocent purchaser at the judicial sale, the doctrine of laches might and probably would apply. The delay, if not the acquiescence, of the claimants during the proceedings in the equity causes, accompanied by frequent and full opportunity to libel the steamer after the causes of action arose, would furnish strong reasons for holding that the vessel could not be libeled in the hands of an innocent purchaser at a judicial sale. But, when the bond is given, the parties contemplate that the steamer may pass into innocent hands, and all liability is thereafter transferred from the steamer to the bond. The sureties would still be liable, even though the vessel had been sunk or burned. In point of fact, the steamer in this case was bought at the judicial sale by the answering sureties and at a price sufficient only to pay the costs, expenses, and receivership certificates, and admittedly prior to the maritime liens which had been previously paid by them. Their situation now is no different, and no worse, from what it would have been had the present libelants intervened in admiralty cause No. 2736, and obtained the benefit of the judgment which was then entered. That the admiralty doctrine of laches has no application under these circumstances is abundantly established by authority. See The Key City, 14 Wall. 653, 20 L. Ed. 896; The Oregon (D. C.) 73 Fed. 846; The Martino Cilento (D. C.) 22 Fed. 859; Nesbit v. Amboy (D. C.) 36 Fed. 925; Norfolk Sand & Cement Co. v. Owen (4 C. C. A.) 115 Fed. 778, 53 C. C. A. 96.

Judgment in libelant's favor will be entered. If parties cannot agree upon the facts necessary to show whether the intervening libelants have maritime liens and the amount thereof, within the principles herein stated, the court will hear further evidence in that respect, or refer the cause to a master to do so.